## Isaac Feigley and Mary Ann Feigley, *vs.* Elizabeth M. H. Feigley.

Where a bill was filed for a divorce, and a supplemental bill was afterwards filed and received without objection by the defendant, the latter must be treated as properly a part of the case.

Where such supplemental bill reiterates the allegations of the original bill, as to the conduct of the husband, constituting the ground for a divorce, facts proved as occurring subsequent to the filing of the original, and prior to that of the supplemental bill, must be treated as supportive of the plaintiff's case.

Feigley vs. Feigley.

Where such supplemental bill assails a deed made by the husband, as fraudulent as against the claim of the wife for alimony, and the grantee answers without objection, the latter submits his rights under the deed for adjudication in the case.

The wife, in reference to her claim upon her husband for a support, or for alimony, stands, to a certain extent, in the same relation that a creditor stands towards his debtor; she may assail a deed made by him with the *actual intent* of defeating her rights.

The statute of 13 *Elizabeth, ch. 5,* was designed to embrace others than those who are strictly and technically creditors, and a wife who has been made the victim of her husband's fraud, is embraced in the clause, "creditors *and others.*"

A husband may alienate his property at will, even though he strips himself of all means of supporting or maintaining his wife, provided he does so *bona fide,* and with no design of defrauding her of her just claims upon him and his estate; the *fraudulent intent,* in all such cases, being the true test of the validity of the transaction.

A creditor cannot be impeded in the collection of his debt, even by a *bona fide* gift of the whole or a part of his debtor's estate, but the rights of the wife may be defeated by such a gift, if not made with the *actual intent* of defeating them.

Where a husband conveys his property to his sister, and the wife assails the deed as a fraud upon her rights, the court must look to the surrounding circumstances for the motives and designs of the parties, and call to its aid every fact, however remote and trivial, which can throw light upon the subject.

In the sale of property for $200, worth $800, there is not such a glaring inadequacy of consideration as would, *of itself,* stamp the transaction with fraud, and render the deed void.

An answer responsive to the bill, denying its allegations of fraudulent motives and intentions in executing a deed, is conclusive upon that question, unless overcome by the testimony of two witnesses, or of one with corroborating circumstances.

Alimony is an allowance out of the *husband's estate,* for the support of his wife, and if he has no estate, no decree for alimony can be passed.

The doctrine of *lis pendens* does not apply to a case where a wife is suing for a divorce and alimony, but only to a case where the proceeding directly relates to the *thing or property in question.*

APPEAL from the equity side of the Circuit Court for Washington county.

The *original* bill in this case was filed on the 7th of February 1846, by the appellee against the appellant, Isaac Feigley, for a divorce *a vinculo* and for alimony. It alleges, in sub-

stance, the marriage of the parties in 1844; that the husband, without cause, *abandoned and deserted* the wife, and led an idle and indolent life, without making any effort to support her or her children; that he was entitled to a future interest in considerable property—his share of the estate of his deceased father. The bill then prays for a divorce *a vinculo;* that a support may be awarded to the complainant and her children, out of the property of the said Isaac; that the guardianship and custody of the children may be assigned to complainant; and for an injunction restraining the defendant from assigning or conveying his property until the final order of the court in this case.

Afterwards, on the 23rd of September 1848, the complainant, under leave of the court, filed an *amended or supplemental* bill, in which she reiterates the charge of *abandonment and desertion*, and further charges, that to oppress and deprive her of all hope of any provision out of his property, the said Isaac, confederating with his sister, Mary Ann Feigley, for that purpose, on the 28th of October 1847, executed a deed of all his interest in the estate of his deceased father to his said sister, for the trifling and pretended consideration of $200; that this conveyance was merely fictitious, and not intended really to deprive the grantor of the benefit of said estate, but only to save the same for his benefit; that before this pretended sale, the said Mary Ann had full knowledge of complainant's bill; that said consideration is altogether inadequate, and has, in fact, never been paid, or if it has, before the same was paid, the complainant gave notice to said grantee of the pendency of her bill, and warned the said Mary Ann not to pay it. This bill further charges, that the said Isaac absents himself from the State, taking no notice of his family; that he has recently returned, but has avowed his determination soon to leave the State again, promising his family no assistance. The bill then calls upon the said Mary Ann to answer, and that if she pretends that she has paid the consideration mentioned in the deed aforesaid, to state how and when she paid, and prays that this deed may be declared null

and void; that provision may be made for the support of complainant and her children; for an order requiring the said Isaac to pay a reasonable sum for carrying on these proceedings, and for the support of complainant and her children during their pendency; and for a writ of *ne exeat*, restraining him from leaving the State until he makes the provision herein prayed, or gives security so to do.

The court granted the writ of *ne exeat*, but it was afterwards dissolved upon the defendant's giving the required security. With this bill were filed as exhibits, 1st, the deed to Mary Ann Feigley, referred to in it. This deed is dated the 28th of October 1847, and for the consideration of $200, conveys to the grantee all the grantor's (the said Isaac's) interest in and to the estate of his father, Peter Feigley, deceased. 2nd, a written notice from the complainant to said Mary Ann Feigley, dated the 22nd of March 1848, (which was served upon her the 24th of the same month,) not to pay the consideration stated in said deed, as she was about to take proceedings to set the same aside, in order to provide for the said Isaac's family. 3rd, the executor's account, showing a balance due the estate of said Peter Feigley of $7161.34. This property, by the will of said Peter, was devised to his widow during her single life, and upon her marriage or death, the executor was to sell the same, and distribute the proceeds thereof (with the exception of a legacy of $500,) equally amongst the testator's children.

The answer of Isaac Feigley, to both the original and amended bill, denies the alleged *abandonment and desertion*, but admits a partial separation and non-intercourse, which he avers was occasioned by the bad conduct of his wife, and then, after other allegations as to his willingness but inability to support his family, he admits the execution of the deed of October 1847, to his sister, Mary Ann Feigley, but *denies* that it was made in order to oppress and deprive complainant of any hope of provision out of his property, or that he confederated with his sister for that purpose, or that the consideration was trifling and pretended, or that the said deed was

fictitious, and not intended really to deprive himself of the benefit of said estate, or that it was only to save the same for his benefit, or that the consideration was inadequate, but avers that the consideration was *bona fide*, and is paid, and that the conveyance was made in good faith. He further avers, that by his father's will, the whole estate passed to his mother for life, and that he has no existing operative interest in the said estate, but must await the contingencies of the marriage or death of his mother, before he can enjoy any part of it. He consents to a divorce *a vinculo*, but protests against any award of support or maintenance to the complainant, and prays that the custody and guardianship of the children may be assigned to him.

The answer of Mary Ann Feigley contains the *same denials* as to the intent and motives under which the deed to her was executed, and as to the adequacy of the consideration, and avers that the consideration was just and true, and that the deed was executed and received in good faith; she denies that she had knowledge of the filing of the original bill before the sale of said Isaac's interest in said estate to her, and avers that the consideration was paid in full, and in good faith by her, by paying $100 in cash, at the execution of the deed, and two judgments previously recovered against the grantor, and by other sums of money advanced to him by the grantee, before the deed was executed. She then denies all manner of fraud, confederation and pretence in the making of said conveyance, and prays that the same may not be declared null and void, and that she may be hence dismissed, with her reasonable costs.

Testimony of several witnesses was then taken under a commission. Only one of these witnesses (Martin,) says any thing of the alleged abandonment or desertion prior to the filing of the *original bill*, and the substance of his evidence is, that said Isaac has not taken care of his family since 1845, and that the complainant and her family were in a distressed and suffering condition. The testimony of all the other witnesses relate to a period subsequent to the filing of the amend-

ed or supplemental bill, and its purport is sufficiently stated in the opinion of this court. The testimony as to the value of the property conveyed by the deed to Mary Ann Feigley, is also stated in the opinion of this court.

The defendants excepted to the admissibility of all the testimony which related to matters which arose subsequent to the filing of the original bill.

The court below (Perry, J.,) passed a decree divorcing the parties *a mensa et thoro*, giving to the complainant the custody of her children, awarding an allowance of $150 per annum, to be paid to her by the defendant, Isaac Feigley, during their natural lives, or so long as they shall live separate from each other, for the support of complainant and her children, and annulling and vacating the deed from him to the defendant, Mary Ann Feigley, and making the property thereby conveyed the security for the payment of the above allowance. From this decree the defendants appealed.

The cause was argued before LE GRAND, C. J., TUCK and MASON, J.

*George Schley* for the appellants, argued the following points:

1st. That the testimony excepted to, is inadmissible and irrelevant for the reasons set forth in the exceptions filed thereto; that it details facts and conduct *subsequent* to the filing of the original bill. 4 *H. & J.*, 521, *Hayward vs. Carroll.* 3 *G. & J.*, 158, *Hoye vs. Brewer, et al.*

2nd. That the only witness in the record, whose testimony bears upon the subject matter of the bill, is Charles Martin, and his testimony does not establish the facts required by the act of 1841, ch. 262, sec. 3, to a decree of divorce.

3rd. As to the validity of the deed. The question of adequacy or inadequacy of consideration, can only arise in this case as a fact indicating fraud. 1 *Story's Eq.*, secs. 244, 245, 246, 247. 1 *Md. Ch. Dec.*, 338, 340, *Hays vs. Henry.* 3 *Do.*, 145 to 148, *Dunnock vs. Dunnock.* 4 *Do.*, 183, *Robin-*

*son vs. Robinson.* 4 *Gill,* 105, *Ricketts vs. Ricketts.* The doctrine of *lis penders* has no application to the case. 2 *Kin-ne's Law Com.,* 131, 132. 7 *Paige,* 290, *Sedwick vs. Sed-wick.* 2 *Johns. Ch. Rep.,* 445, *Murray vs. Lylburn. Story's Eq. Pl.,* secs. 156, 381. 1 *Story's Eq.,* secs. 405 to 407. 2 *Do.,* secs. 908, 953.

4th. The answers of Isaac Feigley and Mary A. Feigley are responsive to the bill—deny all fraud and must prevail. Facts and circumstances unsustained by a witness, cannot overcome them. 6 *Gill,* 391, *Methodist Church vs. Mayor & City Council of Baltimore.* 2 *Md. Rep.,* 365, *Faringer vs. Ransay.*

*Jervis Spencer* for the appellee, argued :

1st. That under the acts of Assembly, the proof furnishes abundant ground to sustain the divorce, and for the custody of the children. The fact that the cruel treatment and aban-donment continued after the bill was filed, makes the case so much the stronger, and the testimony is so much the stronger for this very reason. 5 *G. & J.,* 300, *Davis vs. Calvert.*

2nd. That the conveyance by Isaac Feigley to his sister, Mary Ann Feigley, was void, 1st, for actual fraud, 2nd, for defect of consideration, and 3rd, on account of the *lis pendes.* To sustain these positions, and to show that the wife is placed on the same footing and has the same rights as a creditor, he cited the following authorities. 2 *Atk.,* 62, 377, *Smith vs. Fellows.* 2 *Vernon,* 202, *Fairebeard vs. Bowers.* 7 *Viner's Abr.,* 202. 2 *Roper on Husband & Wife,* 14. 3 *Md. Ch. Dec.,* 174, *Cole vs. O'Neill.* 1 *Do.,* 338, *Hays vs. Henry.* 4 *Md. Rep.,* 96, *McNeal & Worley vs. Glenn.* 3 *Do.,* 99, *Bullitt vs. Worthington.* 1 *Md. Ch. Dec.,* 337, *Hays vs. Henry.* 7 *Blackf.,* 242, *Green vs. White.* 1 *Story's Eq.,* sec. 182. 1 *Pet.,* 310, *Mechanics Bank of Alexandria vs. Seton.*

3rd. That it was proper for the court, in the decree, to pro-vide for the means of its enforcement, and the defendant hav-ing removed from the State, this could only be done by taking

hold of the property.   As to the amount of the provision see 3 *Phill.*, 387, *Rees vs. Rees.*   2 *Hagg.*, 5, *Brown vs. Brown.* 2 *Phill.*, 40, *Cooke vs. Cooke.*   1 *Hagg.*, 351, *Harris vs. Harris.*

After the preceding points had been argued *orally*, a re-argument was directed especially upon the following questions, suggested by one of the judges.

1st.  Does the amended or supplemental bill, in reaffirming the averments of the original bill, so far take the place of the latter as to make the complainant's proof applicable to and supportive of her case?

2nd.  Can a deed, based upon an inadequate consideration, be vacated for fraud upon creditors on the part of the grantor alone, without the knowledge or participation of the grantee? In other words, could such a deed be regarded as voluntary, so far as it concerns the grantee, as respects the difference between the price paid and the actual value of the property, and, therefore, to that extent void as to creditors?

3rd.  Does the wife, in such a case, stand in the attitude of a creditor, with reference to her husband's property?

4th.  If the deed be deemed void as a fraud upon the marital rights, is there any authority in a court of equity to take and hold the husband's property, independent of his control, for the wife's separate support?

Upon these questions the counsel filed written arguments, substantially as follows.

*George Schley* for the appellants:

1st.  The original bill was filed February 7th, 1846.  The deed from Isaac to Mary, bears date October 28th, 1847. This conveyance was the *only new fact* which had occurred in the cause.  "Where the estate or interest of the defendant is not determined, but only becomes vested in another by an event subsequent to the institution of the suit, as in the case of bankruptcy or insolvency, or of *alienation by deed, the de-fect in the suit* may be supplied by supplemental bill.  3 *Daniel's Ch. Pr.*, 172.   8 *G. & J.*, 149, *Calwell vs. Boyer.* On the 23rd of September 1848, the complainant filed her

supplemental bill, for the *purpose of making Isaac's grantee a party to the proceeding*. It will be found, upon reading this supplemental bill, that the charges in the original bill are *re-iterated*, and the proof taken under the commission, although manifestly inapplicable to the case made in the original bill, is supposed to be made relevant by force of the supplemental bill. In answer to this suggestion, it is submitted that the only *exigency* in the cause, requiring a supplemental bill, was produced by the deed of October 1847, and this bill should have been *thus limited. All the matters therein stated, apart from this deed, are surplussage.* The complainant might have introduced new matter to prove what was before alleged, but not to prove a case not made; she had no power to make, thereby, a new case, but to establish the old one. As a further test, would the court, *if no alienation had been made,* have permitted a supplemental bill, reiterating or duplicating the charges or averments in the original, to be filed? If not, and so the law is assumed to be, then every charge in the supplemental bill, apart from the circumstances under which the deed was executed, is surplussage, and no part of the cause now before the court. Relying upon this *position, I reassert* the *first point* in my oral argument.

2nd. The case of *Bullitt vs. Worthington,* 3 *Md. Ch. Dec.,* 99, decided that the conveyance there specified was voluntary to the extent of the excess of the value of the land conveyed over $5000, the money actually paid by the grantee. In that case the conveyance was attacked by "the *creditors* of Walter Worthington, the father and grantor, and also by his permanent trustee in insolvency:" and the proof being that only $5000 was paid, the conveyance for the difference between the value of the land, $20,000, and the price paid, was held to be voluntary, and therefore void as *against the creditors of the grantor.* The correctness of this decision is not now meant to be questioned, and, therefore, will be *assumed* as the law of Maryland. But conceding this case to state the law correctly, how does it reflect upon that at bar? It has no force and sheds no light, it is submitted, unless it can be es-

69      v.7

tablished that the wife, Elizabeth Feigley, stands in the attitude *of a creditor*. The authorities referred to in *Faringer vs. Ramsay, et al.*, 2 *Md. Rep.*, 372, 373, do not support the position for which they are cited; they are unhesitatingly averred to be inapplicable, and fail in supporting the 8th position there taken. If they can be used for the purpose quoted, I frankly admit my incapacity to perceive their applicability or point. These cases presenting no difficulty, unless the wife can be shown to occupy the attitude of *a creditor*, the validity or invalidity of the deed of October 1847, turns upon the solution of this question; can the wife be said to be *a creditor* of her husband, *by virtue of the marital relation*, competent in law to impeach conveyances made by him? If she be, then the law books ought to furnish the decisions and the reasons therefor. The court will not be here fatigued by an examination of the rights, duties and powers of husband and wife. These matters are fully discussed in the various treatises on this subject, and are familiar without citation of authorities. The late chancellor has, in the cases cited in my oral argument, under the 3rd point, very fully enunciated the law of Maryland, and the court is referred especially to the pages there quoted. The results to which he arrived, were that the husband, "if the disposition of the property by him made be *bona fide*, and no right reserved to him, then, *though made to defeat the claim of the wife*, it will be good as *against her*, because an act cannot be denounced as fraudulent which the law authorizes to be done." 1 *Md. Ch. Dec.*, 338, 340, *Hays vs. Henry*. The same doctrine is reiterated in *Dunnock vs. Dunnock*, 3 *Md. Ch. Dec.*, 146, 147. "It is not enough to show that the conveyance, assuming it to be without a valuable consideration, was made to defeat the claim of the wife; that *the law* allows the husband to do, *by gift*, so far as his personal estate is concerned, provided there be no right reserved to himself, and it is not a mere fiction by which, not divesting himself of the dominion over his property during his life, he attempts, after his death, to deprive her of her distributive share thereof." See, also, last sentence on page

148. So in 4 *Md. Ch. Dec.*, 183, "Certainly this court would not, nor is it presumed any court would, undertake to interfere with a man's right to dispose of his own property upon any terms he pleases. He may not only sell it for an inadequate price, but he may give it away, and if he be of competent understanding, and the *rights of creditors* are not involved, no court has a right to say one word about it."

If these decisions correctly announce the law, in what sense can the wife be said to be *a creditor? A creditor!* And yet unable to vacate a conveyance made to defeat her rights, because such conveyance is authorized by law! The husband may *sell* or *give away* his personal property, and although the effect, and perhaps the design, may have been to defeat her of her distributive share thereof, yet she is without remedy, and at the same time a *creditor!* Was ever creditor before thus treated by the law or the courts? If creditor, then she **is** entitled to the rights of one, and if entitled to such rights, then to the appropriate remedies, and yet the cases cited above say otherwise. If she be a creditor, then decisions announcing such novel doctrines cannot be sustained, and are not law. If she be *not* a creditor, then they are easily understood, and present no inconsistency between rights and remedies.

In 2 *Roper on Husband & Wife*, 16, 17, 18, it is stated, "that a freeman, during his life, may make a *bona fide gift or disposition of his property* amongst his children, or *otherwise,* which will *bar his widow's claim under the custom.*" The custom is given and explained in the preceding pages. At page 17, the cases in 7 *Viner's Abr.,* 202. 2 *Atk.,* 62, and 2 *Vern.,* 202, referred to by the counsel for the appellee on the first argument, are stated and shown to be cases of fraud, contravening the principle quoted above from page 16. And the last sentence upon page 17, has the following, "Any *device* to defeat the custom and *preserve the income* of the property to the husband for his life, will be met and cancelled by the court." The last sentence upon page 19, quoted in *Hays vs. Henry,* 1 *Md. Ch. Dec.,* 339, seems to embody the *conclu-*

*sion* of all the preceding authorities discussed by *Mr. Roper.* The result of the preceding remarks seems to be—

1st. That the wife cannot, in any view, be considered as a creditor of the husband, by virtue of the marital relation.

2nd. That the husband, so far as the wife is concerned, has absolute dominion over his personal and real property, except her dower, and may *give* or *sell* it, *bona fide*, during his life, and the wife has no power to call his acts in relation thereto in question, although the *ultimate effect* may be to deprive her of her share thereof, under the statute of distributions. If such gift or alienation had not been made, or, being made, could be avoided by her, she could then take.

3rd. Her inability to question such gifts or disposition of property, demonstrates that she *cannot be a creditor*.

If the above views be correct, it is unnecessary to discuss the 4th question suggested for argument, and so satisfied am I of their correctness, that this question will, therefore, not be agitated now.

The doctrine of *lis pendens*, insisted on by the counsel for the appellee, does not apply, as the following authorities will show. 1 *Story's Eq.*, secs. 405 to 407. 2 *Do.*, secs. 908, 953. *Story's Eq. Pl.*, secs. 156, 351. 2 *Kinne's Law Compendium*, 131, 132. 2 *Johns. Ch. Rep.*, 445. 7 *Paige*, 290, 292.

*Alimony.* See *Crane vs. Meginnis*, 1 *G. & J.*, 463. This case establishes that alimony is a *consequence*, not a *precedence* of a divorce. In other words, the *decree of divorce* constitutes the wife *a creditor of the husband*, and not the filing of the bill. *Until* divorce she is *wife—after* divorce she is *both wife and creditor.*

*As to Fraud.* "Inadequacy of consideration is not a distinct principle of relief in equity." 1 *Story's Eq.*, sec. 245. At best, it is but a fact indicating—causing the presumption of fraud. *Ibid*, sec. 244. In opposition to this presumption or indication of fraud, we have the answer under oath of grantor and grantee, responsive to the bill, denying most conclusively every pretence of fraud. These answers must pre-

vail. See 4th point and cases cited in the oral argument. Fraud, then, being out of view in this case, how has the appellee been injured by the deed of October 1847? Has the husband done more than exercise his *legal* rights over his own property? Having done nothing but what the law authorized him, will this court speculate upon the propriety or expediency of his acts? The propriety or expediency of a gift or sale was a matter solely for his decisions, and the *jus disponendi* being conceded, the mode or occasion are not open to review or reform. The appellants, therefore, seek a reversal of the decree appealed from.

*Jervis Spencer* for the appellee.

1st. I understand that the effect of an amended or supplemental bill is to bring all that was originally averred, as well as what is included in the supplement, to the view of the court, and make it all alike the subject of the action. Any evidence, therefore, which applies either to the original or supplemental bill is *"supportive of her case."* *" The whole record constitutes but one cause."* *Story's Eq. Pl.*, sec. 332. *" The original and amended bills are treated as one instrument."* *Alex. Ch. Pr.*, 110.

I am not sure that I understand the first question propounded. Perhaps it may relate to the competency of granting relief upon the averments of the supplemental bill when such averments are of facts which occurred subsequent to the filing of the original. When I argued the case orally, I did not regard this point on the question of divorce as material, because I thought the direct evidence as to what had occurred before the filing of the original bill quite sufficient to justify a decree for a divorce. The original bill was filed February 7th, 1846; the marriage was in 1844. Feigley admits this, and says that three months after the wedding he found it *"impossible to live inseparably with his wife;"* and Martin proves his cruel abandonment and desertion in 1844 and 1845. The facts which occurred subsequently I regarded in any view as competent corroborative proof, and as showing the incorrigible character of the defend-

ant's neglect and abandonment of his family, and there was no exception to the testimony filed.

As to the questions arising on the deed to Mary Ann Feigley, I did not think it of much importance, inasmuch as, if the case was to be regarded as in *statu quo ante litem motam*, her right would be entirely out of the case, and the court would decree as if the conveyance had never been made. But as she had elected to defend her own right in this case, had submitted such right to the court, and had appealed in defence of it, I did not perceive that it could be regarded that it was not a subject of adjudication in the cause.

But if we wholly depended upon matters that occurred after the filing of the original bill and which are averred in the supplement, there still seems to be no difficulty. As to any matters which have occurred since the filing of this bill, a supplemental bill is the appropriate remedy. *Story's Eq. Pl., sec.* 332. And such "supplemental bill may not only put in issue new matter, but may vary the relief prayed in the original bill." See also *sec.* 352. Lord Hardwicke says: "The plaintiff could not properly amend his original bill by filing new matter which has arisen since the original bill, but ought to have brought a supplemental bill; but then the defendant should have taken advantage of this defect in form by a demurrer, and it is too late to make the objection after an answer." *Archbishop of York vs. Stapleton,* 2 *Atk.,* 137. The right to bring in new matter by supplemental bill is absolute. See also *Wray vs. Hutchinson,* 2 *Mylne & Keene,* 235. I therefore conclude, if the admissions of Isaac Feigley and the testimony of Martin as to what occurred before the filing of the original bill be regarded as insufficient, the supplemental bill brings the whole matter to the view of the court and the proofs are ample.

2nd. In answer to the second question it is submitted, that if the inadequacy is not so great as either alone or with other circumstances to produce an inference of a fraudulent purpose, the purchase is good, even though the grantor has conveyed to *hinder* and *defraud creditors*. But if the purchaser was cognizant of the fraudulent purpose, his title is void, no matter how full a price he may have paid. 1 *Story's Eq., secs.* 353, 369. 3 *Ala. Rep.,* 446, *Moore vs. Tarlton.*

In the case of gross inadequacy of price, when the grantee is familiar with the title and character of the property, the conclusions may be indulged.

1st. That the grantor has been overreached, which occurs most frequently with persons of weak minds or pecuniary distress, in which case the conveyance will be set aside on his application upon his restoring the price paid. He cannot take the property and keep the price. 3 *Madd. Ch. Rep.*, 420, *Wood vs. Abrey.* 2 *Peere Wms.*, 204, *Clarkson vs. Hanway.* 1 *Ambler*, 235, *Lane vs. Page.* 2 *Ves., Sen.*, 516, *How vs. Weldon.* 1 *Cox*, 333, *Evans vs. Llewellin.* 2 *H. & J.*, 294, *Brogden vs. Walker.*

2nd. That there was an intention to defraud creditors *or others.*

Either of these conclusions implicates the grantee. In the second case the conveyance is *good* against the grantor, because he cannot allege his own fraud to avoid his deed. But in both cases the deed is void as to creditors. In the first case, because the property is still the grantor's, and is liable to the claims of his creditors; and in the second case, because, under the statute of 13 *Elizabeth, ch.* 5, the deed is absolutely void against every one but the grantor, not "as respects the difference between the price paid and the actual value of the property," but absolutely. "Cases of bargains of an unconscionable nature, and of gross inequality, naturally lead to the presumption of fraud, imposition or undue influence." 1 *Story's Eq., sec.* 244. "There may be such an unconscionableness or inadequacy in a bargain as to demonstrate some gross imposition or some undue influence, and in such cases courts of equity ought to interfere upon the satisfactory ground of fraud." *Sec.* 246. In *sec.* 188, the principle is strongly stated, in the words of *Lord Hardwicke.* See also *secs.* 350 to 353. "All voluntary dispositions made by debtors upon the score of liberality were revocable, whether the donee knew of the prejudice intended to creditors or not." *Sec.* 351. "The fraudulent grantee has no rights against creditors." 3 *Johns. Ch. Rep*, 371, *Roberts vs. Anderson.* "It is i possible the deeds should stand as a security;" that is, for the sum paid. *Per Kent, C. J.* 4 *Johns.* 597, *Sands vs.*

*Codwise.* 7 *Ala. Rep.*, 280, *Borland vs. Walker.* 3 *Do.*, 446, *Moore vs. Tarlton.* 4 *Md: Rep.*, 96, and 3 *Md. Ch. Dec.*, 349, *McNeal & Worley, vs. Glenn.* I have not seen in the elementary books any thing, directly or indirectly, recognising any right of reimbursement against creditors. I do not know what was done in the case of *Worthington vs. Bullitt*, in the appellate court, but the *chancellor* seems to have put it on the ground of voluntary conveyances, which is different from fraud as implied from inadequacy of consideration. Nor have I seen a single case in which the deed has not been set aside, upon the application of any one interested at the date of the deed, when there was such an inequality as existed in this case.

But are there no facts in this case which, in association with the gross inadequacy, tend to implicate the grantee? The court must make rational conclusions from the situation of the parties. The grantee undeniably knew the extent and value of the interest conveyed to her. It was the same interest and property she had herself, and was worth $2000 instead of $200. She knew the inadequacy of the consideration, and that the grantor had a motive for conveying to her. Whether that motive was to defeat the wife's claim for alimony or to defeat his creditors, or to relieve himself from pecuniary distress, of which she took advantage, either would vitiate the deed. And it is absolutely certain, that she knew he was influenced by one of these motives. There was no moral duty on him to provide for his sister to the prejudice of his own family to constitute *a good consideration*, if the deed was defended on any such ground. The fact of the conveyance proves that the grantor and grantee were on confidential terms. It is proved, that after the abandonment of his family the grantor stayed in the house of his mother, from which the complainant was excluded, and when he must have been in daily intercourse with the grantee, his sister. It is impossible, therefore, to conjecture that she was ignorant of the pendency of the action of the complainant, or of the pecuniary distress of Isaac, if he were embarrassed. As to her answer, it is equivocal as to her knowledge, and there is probably not a case in the books in which

the sale was vacated for inadequacy of consideration, in which the fraud was not denied as positively as in this case. In some of them the court thought there was really no actual but only a legal fraud.

3rd. In answer to the *third* question I maintain, that the deed is void at common law, and also under the provisions of the statute of 13 *Elizabeth, ch.* 5. The statute provides, "that all and every grant, bargain and conveyance of land or tenements, goods and chattels, &c., for the intent or purpose to delay, hinder and defraud creditors *and others* of their just and legal actions, suits, &c., shall be deemed and taken to be utterly void, frustrate and of none effect." It will be observed, that the statute does not apply only to creditors, but to creditors *and others* having actions, suits, &c. *Roberts on Fraud. Con.,* 1, *note (a.)* But suppose it applied only to creditors, what is a creditor in the view of the law? "A creditor is he who has a right to require the fulfilment of an obligation or contract." *Bouv. Law Dic.,* 383. All the marital rights are legal obligations growing out of and incident to the matrimonial contract. It is declared a part of every contract for the payment of money that the property of the debtor should be liable for the payment. So essential a part of the contract is it, that the legislature can pass no law absolving the property, because, say the courts, it would impair the obligation of the contract. Are not the wife's rights to dower and alimony, and maintenance in case of separation for the bad conduct of the husband, equally obligations of the marriage contract? The courts have often recognised the right to relief against fraudulent sales, of those to whom the grantor was not an actual debtor at the date of the conveyance, such as sureties and such as had unliquidated demands on covenants, simple contracts, *torts,* &c. 1 *Amer. Lead. Cases,* 57.

If we take *creditor* in a literal sense, it means one who puts trust in another, and regarded in that sense, a wife occupies a position as a creditor higher and more sacred than any other. In the case of *Hays vs. Henry,* 1 *Md. Ch. Dec.,* 338, the right of the husband to dispose of his property is thus qualified, "provided the transaction is not merely colorable and be unattended with circumstances indicative of fraud upon the rights

of the wife." There is, however, something in the case which I cannot comprehend, and which seems to put the rights of the wife against the frauds of the husband out of the protection of our laws. The proposition which appears in the argument to have struck the chancellor so forcibly, appears to me a mere sophism, viz: "An act cannot be denounced as fraudulent which the law authorises to be done." This is merely begging the question, and is as good for one case as another. It assumes that the law does allow conveyances to defeat the wife's right, and after this assumption concludes, the law does not regard it as a fraud. In the same connection it is said: "If the disposition of the husband be *bona fide*, though made to defeat the claim of the wife," &c. This purpose would indubitably be, *per se*, *mala fides* with regard to every one but a wife, and I cannot understand the distinction, unless the wife has no right to protection. The statute of 13 *Elizabeth, ch.* 5, is broad enough to guard a wife's rights as well as those of other persons. It makes void conveyances to hinder the actions of creditors *and others*. A creditor has his action and the wife has her action actually depending. A conveyance is made to hinder the creditor's action, and the deed is indubitably void. Another is made to hinder the wife's action, and it is good. This is not a fair construction of the statute. It is a solecism. There may be a distinction in favor of the complainant in this case between a woman living with her husband and having no present right of action against him and one abandoned by him, and having her right of action for alimony; but in this civilized and enlightened age, I hope she would be protected in either case.

I referred the court to a number of cases in which the wife has been protected. 2 *Atk.*, 62. 7 *Viner's Abr.*, 202. 2 *Vern.*, 202, and 2 *Roper on Husband & Wife*, 14. But it was said on the other side, that the rights thus protected are customary right. My answer to that was, that if a right existing only by a local custom would receive such protection, *multo fortiori* would a right be protected which existed under a general and positive law. The custom had no effect on the conveyance; it only gave the right to the wife; and to say that

a customary right would be more sedulously guarded than a common law or statutory right, is to assume the former more sacred than the latter. There are divers cases showing that a wife cannot convey her property in fraud of her husband. 13 *Maine Rep*, 124, *Tucker vs. Andrews.* 2 *Leigh.*, 11, *Waller vs. Armistead.* 1 *McMullan's Ch. Rep.*, 236, *Ramsay vs. Joyce.* 3 *Md. Ch. Dec.*, 174. Are not the wife's rights as sacred as those of the husband? But my adversary says it is in the power of the husband absolutely to dispose of his property as he pleases. This is equally true of the wife before the marriage. Yet when she has the absolute right, she cannot exercise it in fraud of her future husband. Neither can the husband exercise his in fraud of his wife.

4th. The next question is: if the deed be void as a fraud upon the marital rights, is there any authority in a court of equity to take and hold the husband's property, independent of his control, for the wife's separate support? This has been often done. I have not thought it necessary to go further than the case of *Ricketts vs. Ricketts*, 4 *Gill*, 107. The right in that case was recognised by the Court of Appeals. The case was argued by gentlemen of great legal ability and research, and the power of the court does not appear to have been disputed. It is believed to have been the common practice of the ecclesiastical courts to assign a portion of the property for the support of the wife, independent of the control of the husband.

Again, if the court have the power of setting aside the conveyance in favor of the wife, they necessarily have power over the property. It is believed the court in such cases commonly direct the disposition of the property. See *McNeal & Worley, vs. Glenn,* 4 *Md. Rep.*, 96, and 3 *Md. Ch. Dec.*, 349, in which it was done under prayers to vacate and for general relief, the same as in this case. This would be sufficient to justify the decree in this respect, if other grounds were deficient.

I will not leave the subject without a word as to the *lis pendens*. If the suit was *lis pendens* as to *the property*, it will not be denied that a sale of it could not affect the complainant's right. Let us therefore inquire what is *alimony*? *Blackstone* says, "*It is that allowance which is made to a woman for her*

Feigley vs. Feigley.

*support out of the husband's estate.*" 1 *Bl. Com.*, 441.
*Shelford* says, "*It signifies that proportion of the husband's
estate which the wife sues in the ecclesiastical courts to have
allowed her.*" *Shelford on Marriage & Divorce,* 586. *Judge
Story* expressly speaks of a bill for alimony as a *lis pendens.*
2 *Story's Eq.*, sec. 1472. If it be a right to have alimony
allowed *out of the husband's estate*, the proceeding is as much
against the estate as a bill of the vendor for the unpaid purchase
money, or of one who had advanced the purchase money to
have the title made *to* him. In either case no deed could be
made, pending the proceedings, to prejudice the complainant.
In *Ricketts vs. Ricketts*, 4 *Gill*, 107, an injunction was granted
to restrain the husband from alienating the property, and it was
sustained by the Court of Appeals. In this case we pray for
an injunction, but it was not pressed, because we thought a
bond would be required. Suppose, upon the issue of the in-
junction in *Ricketts vs. Ricketts*, the defendant had alienated,
would the title of the purchaser have been good against the
complainant? I think the court will say, it certainly would
not. If not, why so? The grantee is not affected as a party,
and the injunction could make no difference as to third parties.
Its violation would only subject the defendant to punishment
for a contempt. But because it is *lis pendens*, third parties are
affected by the proceedings, and it is no more *lis pendens* after
the issuing of the injunction than it was before. That the pro-
ceeding related to the property I think there can be no dispute,
and if I am right it is conclusive. "The principle is now too
well settled to be doubted, that a *lis pendens* duly prosecuted is
notice to the purchaser so as to affect his interest by the decree."
*Green vs. White*, 7 *Blackf.*, 243. "The principle of *lis pen-
dens* is, that the specific property must be so pointed out by the
proceedings as to warn the whole world that they meddle with
it at their peril." 1 *Strob. Eq. Rep.*, 182, *Lewis vs. Mew.*

In this case the property was described as specifically in the
bill as it was in the deed, and was the same. "It is a well
settled principle, that the court is not bound to take notice of
any interest acquired in the subject matter of the suit, pending
the suit." *Bank vs. Seton*, 1 *Pet.*, 310. *Green vs. White*,
7 *Blackf.*, 243.

*George Schley* for the appellants, in reply:

1st. The counsel for the appellee quotes *Story's Eq. Pl.*, *sec.* 332, to sustain the proposition that the effect of a supplemental bill is to project the facts alleged in the original bill *beyond* the time covered by it, to and inclusive of the time of filing the supplemental bill. The last sentence in that section seems to announce the true rule: "Wherever a *supplemental bill* is not a *supplemental suit*, but only introduces *supplemental matter*, the whole record constitutes but one cause," &c. The only supplemental *matter* introduced into the bill is the conveyance from Isaac to Mary, all the other matters would form the foundation of a fresh suit. For example, suppose no alienation to have been made, and no supplemental bill therefore filed, and the parties to have gone to trial upon the original bill and proof applicable thereto in the record, and the complainant to have been denied relief, can it be questioned that she could *instanter* have filed a bill upon the facts occurring subsequent to the filing of the original bill, (now embraced by the supplemental bill,) and that upon proof thereof a divorce would have been decreed? Assuming this to be too clear for cavil, the matter introduced into the supplemental bill *apart from the deed* is not supplementary matter, but a supplemental *suit*. The question here recurs, would the court grant a supplemental bill merely to repeat and duplicate the allegations of abandonment and desertion made in the original bill? It is contended that according to the rule of equity it would not, because a supplemental bill was necessary in this case simply and solely for the purpose of adding a new party. *Story's Eq. Pl., sec.* 352, is relied upon by the appellants as directly adverse to the right of the appellee to have embraced the matters she has in her supplemental bill.

2nd. *As to the deed:* It is not a voluntary conveyance, but a deed for a valuable consideration, viz: $200. The will of Peter Feigley, the father, shows that the property was to be enjoyed by its ultimate recipients, his devisees, upon the death or marriage of his widow. The testimony of Smith is, that in his opinion Isaac's interest was worth $700 or $800, and

of Gelwick's $1600. How then does this cause appear before this court? A man of sound mind, not indebted, having the *jus disponendi*, sells and conveys his property for $200. Because one witness conjectures it to be worth $800 and another $1600, the court is urged to a *per saltum* conclusion that the deed is fraudulent and void, *not against creditors*, none being in court attacking it, but against *others*, *e. g.*, the wife of the grantor. On the other hand the answers of grantor and grantee *deny all fraud*, aver the deed to be *bona fide* and for valuable consideration, and the grantee *specially denies* all knowledge of the existence of the original suit when the purchase was made. Yet because she was the sister, and because the defendant lived sometimes at his mother's and could not live *inseparably* with his wife, the counsel for the appellee has constructed a spring-board of assumptions, inferences and conclusions, not warranted and not sustained by any proof in the record, from which the court is solicited to vault to the conclusion that the whole transaction was a fraud.

Fraud is never to be *presumed*, but must be established by *proofs*. 1 *Story's Eq.*, sec. 190. In 2 *Md. Rep.*, 365, this court has said, "that deeds are *prima facie* evidence of the verity of their contents, and when supported by the positive answer of the grantee, the testimony to set them aside ought to be so clear and explicit as to leave scarcely a doubt on the subject." See also 3 *Md. Rep.*, 212, 213. Apply this criterion to this cause and where in the record can such testimony be found? The only fact indicative of fraud is the inadequacy of price, and *this, per se*, is *insufficient*. See 1 *Story's Eq.*, sec. 245, in which the good sense of the doctrine is well expressed and strongly stated. The statute of *Elizabeth* cannot apply unless the wife is held by the court to have been *a creditor at the date of the deed*, 1 *Roper on Prop.*, 311. 2 *Younge & Coll.*, 172, 178, *Ede vs. Knowles*. 1 *Story's Eq.*, sec. 361. And even if she could be held to be a *creditor* competent to impeach the deed, where is the proof in the record to bring this case *within the operation* of the statute? The statute does not declare all voluntary, but only all

Feigley *vs.* Feigley.

fraudulent conveyances to be void.   And whether a convey-
ance be fraudulent or not, is declared to depend on its being
made "upon good consideration and *bona fide.*"   It is not
sufficient that it be upon good consideration or *bona fide*.   It
must be both.   And therefore if a conveyance be defective in
either particular, although it is valid between the parties and
their representatives, yet it is utterly void as to creditors.
1 *Story's Eq.*, *sec.* 353.   Try this deed by the above standard :

1st.  Was it made upon "good consideration," words which
in their widest sense embrace "valuable consideration?"   1
*Story's Eq.*, *sec.* 354.   It purports to be for valuable consid-
eration, which, *per se*, is *prima facie* evidence of its having
been paid.   1 *Gill*, 84, *Wolfe vs. Hauver*.   In addition to this
evidence the answer of the grantee, unquestioned by any evi-
dence in the cause, establishes the fact of the money having
been paid.   The *first particular* has been established *by proof*.

2nd.  Was it executed *bona fide ?*   The answers of grantor
and grantee say it was, and they must prevail, according to
all the Maryland decisions, unless rebutted.   Where are the
two witnesses ?   Where is the witness with cogent circum-
stances ?   The record is as silent as the grave, and no answers
to these questions can be had from it.

But it is contended that the deed is void at common law.
Here again the same difficulty recurs, and before the deed
can be attacked in this mode the wife must be shown to be
"*a creditor*" *at the time* the conveyance was made.   By *the
common law*, fraudulent gifts or conveyances were avoidable
by persons who were *creditors at the time* such gift or con-
veyance was made; but such gifts or conveyances were not
avoidable by persons who became creditors *subsequent* to the
making of them.   1 *Madd. Ch. Rep.*, 221.   The difficulty
which occurs at every step of the attack sought to be made
upon the deed is, does the wife in this case stand in the posi-
tion of "*a creditor ?*"   My learned friend's views on this point
are given in his argument, in which, after striving hard with
*Hays vs. Henry*, he appeals to the "civilization and *enlight-
enment* of the age" for remedy.   The court is next referred

to *Atkins. Vin. Abr.*, and *Vernon*, and 2 *Roper on Husband & Wife*, 14. At page 17 of this last authority, the above cases are shown to have been *cases of fraud* contravening the principles expounded in pages 16, 17, 18. This is *my answer* to those authorities and not that suggested, viz: that the rights were protected because they were "customary rights."

Fraud vitiates every conveyance, and conceding the fraud the right to relief is admitted, and hence the cases cited to show that a wife cannot convey her property in *fraud* of her husband. The wife then not being *a creditor*, she is incompetent to impugn conveyances made in contravention of the common law or the statute. When the decree of divorce and the decree for alimony has been passed, she may *then*, in a qualified sense, be said to be a creditor, but not *until then*.

MASON, J., delivered the opinion of this court.

The supplemental bill having been received, without objection on the part of the defendants, we must treat it as properly a part of the case. It having reaverred the substantial allegations of the original bill, as to the conduct of the husband, which constituted the ground of the plaintiff's application for her divorce, we must treat the facts deposed to by the several witnesses, as supportive of the plaintiff's case, although most of those facts occurred subsequent to the filing of the original bill, but prior to the filing of the supplemental bill. The testimony, we think, under those circumstances fully sustains the plaintiff's case, and entitles her to her divorce, *a mensa et thoro.* So much therefore of the decree as grants the divorce is affirmed.

The defendant, Mary Ann Feigley, having answered the supplemental bill, so far as the same relates to the conveyance under which she claims, without objection, must be regarded as having submitted her rights under that deed for adjudication under the present proceedings. The supplemental bill, among other things, seeks to vacate the deed from Isaac Feigley to his sister Mary Ann, upon the ground of its having been made fraudulently, to defeat the marital rights of the complainant.

The first objection taken by the defendant to this bill is, that there does not subsist such a relation between a husband and wife, as would entitle the latter to assail her husband's conveyances upon the ground of fraud, as might be done in the case of an ordinary creditor at common law, or under the statute of *Elizabeth*, who finds himself hindered, delayed or defrauded by means of such a conveyance. In other words, does the wife stand in relation to her husband in reference to her claim upon him for a support, or for alimony, in the same attitude that a creditor stands towards his debtor? We think, to a certain extent, she does. The language of the statute of *Elizabeth* is surely broad enough to embrace such a case. It provides, "that all and every grant, &c., for the intent or purpose to delay, hinder and defraud creditors, and *others*, of their just and lawful actions, &c., shall be void," &c. The statute seems to design to embrace others than those who are strictly and technically creditors: and if under such a comprehensive clause, as "*creditors and others,*" a wife, who has been made the victim of her husband's fraud, is not to be included, we are at a loss to ascertain to whom else it was designed to relate.

We do not wish to be understood as carrying this doctrine to an extent which would impose any restraint upon the husband in the free and unlimited exercise of his right to alienate his property at will, even though in the exercise of this right he strips himself of all means of supporting or maintaining his wife, provided he does so *bona fide*, and with no design of defrauding her of her just claims upon him and his estate. The *fraudulent intent* in all such cases being the true test of the validity of the transaction. *Ricketts vs. Ricketts*, 4 *Gill*, 105.

There is this difference between the claim of the wife upon her husband's estate, and that of a creditor upon the estate of his debtor: in the latter case a debtor cannot, even by a *bona fide* gift of the whole, or a part of his property, to a third party, impede his creditor in the collection of his debt. Under such circumstances, such a transfer would be voluntary, and as against a *bona fide* creditor, void in point of law. Not so

as respects the gifts or voluntary transfers by a husband of his property in relation to the rights of his wife. If not made with the *actual intent* of defeating the rights of his wife, they will be sustained, although they leave her without the means of a subsistence.

The next inquiry then is, was the deed from Isaac to his sister, Mary Ann Feigley, of the 28th of October 1847, void upon the principles announced above? Was it a *bona fide* transaction, or was it the result of a deliberate purpose to defraud the wife of her claim to alimony?

From the nature of such an issue as is thus presented, we could hardly expect that any direct testimony could be brought to bear upon it. Resting, as the transaction did, between a brother and sister, dependent in no way upon the participation or concurrence of others, secret, locked up in the bosoms of the two actors themselves, we must look for the motives and designs of the parties, in the surrounding circumstances attending the transaction, and must call to our aid every fact, however remote and trivial it may be, which can throw light upon the subject.

In reference to the defendant, Isaac Feigley, the court have no doubt that the deed in question was executed in fraud of the rights of his wife. The original bill for the divorce carried to him notice of the complainant's purpose to subject his estate, if possible, to liability for alimony. It contained a prayer for an injunction to restrain him from alienating it. He was also, no doubt, impressed with a conviction that his conduct to his wife had been such as to constitute just grounds for supposing that this application would be viewed with favor by the court. Regarding these facts in connection with the circumstance that the grantee was his sister, and that the consideration upon which the deed rested ($200,) was wholly inadequate to the value of the property, which, incumbered with his mother's life estate, was estimated as worth seven or eight hundred dollars; and of the correctness of this estimate the court have no doubt, from the facts of the case, independent of the direct evidence of the witnesses upon the point.

Feigley *vs.* Feigley.

The proof against the defendant, Mary Ann Feigley, stands upon other grounds. There is no *direct* evidence in the record as to the fraudulent participation of this defendant in this transaction, other than the mere inadequacy of consideration contained in the deed. It is not such a glaring inadequacy as, of itself, to stamp the transaction with fraud, by shocking the common sense of honesty, and thereby to render the deed void.

But, at this stage of the case, we are met by the doctrine often announced in this court, that an answer of the defendant, responsive to the bill, denying the allegations therein made in regard to his motives and intentions, is conclusive upon that question, unless overcome by the testimony of two witnesses, or of one, with corroborating circumstances.

In the case now before us, whatever may be our views upon the general merits of the case, we are obliged, in the formation of our judicial opinion, to be controlled by the principle announced above. Both of the defendants in this case *flatly deny* the allegations of the bill in regard to their fraudulent intention, and as that denial has not been contradicted by the testimony of any witness, it must be taken as conclusive upon the question.

The defendant, Isaac, being left entirely without property, no decree for alimony can be passed against him, alimony being an allowance out of the *husband's estate*, for the support of the wife. Where there is no estate, there can, therefore, be no alimony.

The doctrine of *lis pendens* has no application whatever to this case. As well might a pending action at law, to recover an ordinary debt, be a *lis pendens* as to the property of a debtor, as a proceeding like the present, the purpose of each being to subject the property of the debtor to the payment of debts. *Lis pendens* is a proceeding directly relating to *the thing or property in question.*

The decree is affirmed in part, and reversed in part.

*Decree affirmed in part,*
*and reversed in part.*