PETER ANGELOS ET AL. *v.* MARYLAND CASUALTY COMPANY

[No. 331, September Term, 1977.]

*Decided December 12, 1977.*

The cause was argued before DAVIDSON, LOWE and WILNER, JJ.

*Glenn B. Harten* and *Michael A. Amselmi* for appellant Peter Angelos. *Gregory S. Hrebiniak,* with whom were *M. Carr Ferguson, Assistant Attorney General, John J. McCarthy, Edward J. Snyder* and *Jervis S. Finney, United States Attorney* and *Herbert Better, Assistant United States Attorney,* on the brief, for appellant United States of America.

*Gordon Murray* and *Julian I. Jacobs,* with whom was *Allen Handen* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

The Circuit Court for Calvert County was called upon to determine the priorities to the surplus proceeds from a second mortgage foreclosure sale as between the holder of a third mortgage, Peter Angelos, and a judgment creditor, Maryland Casualty Company. The Angelos' third mortgage had been executed before, but recorded after, the institution of a suit by Maryland Casualty Company, whose debt had been subsequently reduced to judgment. The court applied the doctrine of lis pendens and awarded the fund to the judgment creditor. Angelos, the third mortgagee, appealed.

A further complication arose after that appeal when the United States of America was permitted by this Court to intervene. The intervenor is asserting tax liens against the surplus from the foreclosure sale by the second mortgagee. The ultimate right to the proceeds depends upon facts not in

this record, and while we find the trial court's judgment to have been in error, we cannot finally determine the full extent of the rights of the parties without further fact-finding.

The initial case which brought on the appeal arose when John and Carolyn DeVaughn, who had come upon bad times, executed to their attorney, Peter Angelos, a third mortgage in the amount of $50,000 as consideration for his legal services. The record is not clear as to whether that consideration was to cover only past services or was intended to include advances for future services. A week after the DeVaughns executed the mortgage, but before Angelos recorded it, Maryland Casualty Company claims to have sued[1] the DeVaughns, presumably under an indemnity agreement for $690,357.00 which Maryland Casualty had apparently paid on account of the DeVaughns under a bonding agreement. A companion suit sought to enjoin the DeVaughns from divesting themselves of their residence, the subsequent sale of which provided the funds under dispute here.[2]

1. Neither the extract nor the record indicates that the pleadings or records of these cases were included in this case below or on appeal. Had the appellant questioned the sufficiency of the evidence we would be hard pressed to determine that upon which the chancellor relied.

There is an unsigned title report in this case, entered into evidence by stipulation, indicating that two equity proceedings had been filed by Maryland Casualty against the property owners, Mr. and Mrs. DeVaughn; one seeking the judgment aforesaid, the other incorporating the first by reference and seeking to enjoin the DeVaughns "from divesting themselves of the residence which is the subject matter of this report." Neither the pleadings in those two cases, nor the judgments in them, were offered in this case as evidence.

It is evident from the testimony that all parties took for granted that the equity suits had been filed on or about July 23 and 24, 1975. The most direct testimony substantiating the correctness of this presumption came from a former associate of appellant Angelos.

"Q. Mr. Caplis, you have read Equity 30-17, have you not, which concerns itself with Affilliated Contractors and John A. DeVaughn and I will call your attention to the various bonds that are filed in here and are there not indemnified agreements in each of these cases signed individually by the DeVaughns?

A. Well, without looking over each paper in particular, generally there are bonding documents in that suit, in Equity 30-17. I did come in contact with Equity 30-17 some time in August of 1975.

Q. In this file, it speaks for itself, this shows that that case was filed on July 23rd, 1975?

A. That is what the file indicates."

2. Although we have appended to this opinion a chronology of all relevant events as we were able to perceive them from the briefs, extracts and record

The chancellor entered judgment on behalf of Maryland Casualty Company under the doctrine of lis pendens. Lis pendens literally means a pending action; the doctrine derives from the jurisdiction and control which a court acquires over property involved in an action: pending its continuance and until final judgment is entered. Under the doctrine, one who acquires an interest in the property pending litigation relating to the property takes subject to the results of the litigation. It is clear that the doctrine has no application except where there is a proceeding directly relating to the property in question, or where the ultimate interest and object of the proceeding is to subject the property in question to the disposal of a decree of the court. *Feigley v. Feigley,* 7 Md. 537, 563; see *Applegarth v. Russell,* 25 Md. 317.

We need not decide the unlikely prospect that the petition for an ex parte injunction to restrain the sale of land preserving an asset for a general creditor was sufficient to comply with the *Feigley* requisite that the proceeding relate directly to the property in question, since Angelos' property interest was acquired through a mortgage obtained prior to the commencement of the litigation upon which Maryland Casualty's lis pendens claim rests, and therefore is not subject to the operation of the doctrine.

Md. Code, Real Prop. Art., § 1-101 (c) defines the term "deed" as used in the Real Property Article to include, among other things, "mortgage". Subsequent § 3-201 states that:

> "Every deed [or mortgage], when recorded, *takes effect from its effective date as against* the grantor, . . . and *every creditor of the grantor with or without notice.*" (emphasis added).[3]

Although the mortgage was recorded after the suits were filed, under the statute it took effect against Maryland

---

before us as a ready reference for the pedantic, the facts thus far recited are sufficient to determine the priorities as between the original claimants. Details of the proceedings are not available because of the limited evidence appearing in the record.

**3.** The wording of that sentence incorporates the holding of Knell v. Green Street Building Association, 34 Md. 67. See Comment to Former Article 21, Title 3, Subtitle 2 immediately preceding Real Prop. Art., § 3-201.

Casualty as of the date of mortgage, which was (assuming the title report to be correct) nearly a month before the suits were filed.

Maryland Casualty contends, however, that the Angelos mortgage is not a valid mortgage because "there was some question as to what was the consideration for this mortgage in the court below." The argument that follows is based upon comments made by the chancellor which raised some question as to the validity of the mortgage on the basis of some evidence that part of the consideration may have been for future rather than present services.

> "We think there is a substantial question in this case. It is whether this mortgage is valid at all because we apprehend that under the Maryland law a mortgage as argued by Mr. Handen must be given for present consideration and an affidavit to that effect must be entered into. The testimony clearly shows that the mortgage in this case was given in an attempt to secure these attorneys for work which they had done for their clients extending for some period of time in the past and contemplating perhaps some future work but not as much future work as apparently was done.
>
> In any event, we prefer to say that — let's assume for the purpose of argument that this was a valid mortgage although we have grave doubts about that."

The chancellor's reference to the necessity for present consideration in a mortgage, like that of appellee who has parroted him, was apparently misconceived by his contemplation of the law as it existed prior to the legislative amendment in 1972 by Chapter 349. All of the authority they rely upon was predicated upon the old statute and such cases are therefore inapposite in light of the new law presently codified in Real Prop. Art., § 7-102 (b),[4] which reads:

> "(b) *Priority of future advances.* — If after the

---

4. Prior to the 1972 amendment the law regarding mortgages for future advances read:

"No mortgage or deed in the nature of a mortgage shall be a lien

date of the mortgage or deed of trust, any sum of money is advanced, any endorsement or guaranty is made, or the liability under an indemnity agreement arises, priority for such sum of money or for any indemnity arising under the endorsement, or guaranty, or indemnity agreement dates from the date of the mortgage or deed of trust as against the rights of intervening purchasers, mortgagees, trustees under deeds of trust, or lien creditors, regardless of whether the advance, endorsement, or guaranty was obligatory or voluntary under the terms of the mortgage or deed of trust."

We can benefit interpretively here from the relatively new legislative procedure of supplying commentary explaining

---

or charge on any estate or property for any other or different principal sum or sums of money than the principal sum or sums that shall appear on the face of such mortgage and be specified and recited therein, and particularly mentioned and expressed to be secured thereby at the time of executing the same; and, except as is hereinafter provided, no mortgage or deed in the nature of a mortgage shall be a lien or charge for any sum or sums of money to be loaned or advanced after the same is executed, except from the time said loan or advance shall be actually made; and, except as is hereinafter provided, no mortgage to secure future loans or advances shall be valid unless the amount or amounts of the same and the times when they are to be made shall be specifically stated in said mortgage; this not to apply to mortgages to indemnify the mortgagee against loss from being endorser or security, nor to any mortgages given by brewers to maltsters to secure the payment of the latter of debts contracted by the former for malt and other material used in the making of malt liquors; nor are the provisions hereof intended to apply to deeds of trust in the nature of mortgages or any other deeds of trust to secure bonds, notes or other obligations. Provided, however, that any mortgage, if it so recites, may secure future advances to be made at the mortgagee's options, prior to the full payment of the mortgage debt but not to exceed in the aggregate the sum of thirty-five hundred dollars ($3500) nor to be made in an amount which would make the mortgage debt exceed the original amount thereof; and all such future advances so made shall be liens and shall be secured by such mortgage equally and to the same extent as the amount originally advanced on the security of such mortgage, and all such future advances shall be a lien on the property therein described as of the date of the original mortgage, good and valid against and superior to all rights of subsequent creditors, purchasers, mortgagees, and other lienors and encumbrances, and any of them, provided the full amount of any such advance is used for paying the cost of any repair, alterations or improvements to the mortgaged property."

the effect of statutory changes. The extensive comment following that section includes the explanation that:

"The change abolishes the distinction as to whether the advance was obligatory or voluntary under the terms of the mortgage, *and makes all future advances date back to the date of the mortgage so as to squeeze out the intervening rights of third parties.*" (emphasis added).

It is apparent then that as to Maryland Casualty the subsequently recorded Angelos mortgage prevails because executed before appellee's suits were filed, regardless of whether the consideration was present or future.

Unfortunately, it is not so simple as between Angelos and the United States of America who was permitted to intervene due to its interest in the proceeds established by tax liens purportedly filed on August 29, 1975.

### The Intervenor

On July 20, 1977 the United States moved to intervene pursuant to Maryland Rule 208 a.[5] There having been no answer filed the motion was granted and an order permitting intervention was signed by Chief Judge Gilbert on August 9, 1977.[6] Although it is questionable whether we can decide

---

5. The United States, it appears, had filed notice of a federal tax lien in the Circuit Court for Calvert County on August 29, 1975, and had additionally filed a proof of claim in this case one month prior to the March 14th hearing. We presume, without deciding, that the former action was taken to comply with the requirement of the Maryland Revised Uniform Federal Tax Lien Registration Act, Md. Code, Real Prop. Art., §§ 3-401 — 3-405, and that the latter was done pursuant to Md. Rule W75 a. The fact of these notices may account for the recognition of a tax lien by the parties and by the court. It does not explain why the government was not notified of the hearing to determine priorities.

6. Maryland Casualty Company moved on the day of argument, November 14, 1977, for leave to present additional legal arguments including opposition to the government's right to intervene. For obvious reasons we denied that motion as untimely offered. Md. Rule 1036 c.

A second argument sought to be raised in the motion presented at the final hour contended that the Angelos mortgage was a fraudulent conveyance. That issue was not raised below either by pleadings or evidence and no contention thereof was raised timely by brief. Any such contentions are

issues the evidence of which is not before us, because we must reverse this case as between the original parties, we will discuss, for purposes of assisting the lower court, the priority of the intervenor as well. We are limited in our reasoning to the extent that we can base our analysis only upon the same thin evidence stipulated to in the form of a title report, which we pointed out in reaching the issue of lis pendens as the only evidence that we could find in the case of the suits relied upon by Maryland Casualty in its lis pendens assertion. But see n. 1. That report also contained the only reference to pending tax liens submitted as evidence in the case.[7] Without a record with more substantial foundation, our discussion is necessarily espoused somewhat in the abstract; however, we write for the guidance of the lower court, which will have the issue to decide either on remand for retrial of the Rule W75 a. proceeding or will be confronted with pending exceptions to the auditor's report. In either case, our anticipating the question will hopefully avoid the expense and delay of another appeal to this Court.[8] Md. Rule 1085.

The United States conceded in open court and in its brief as intervenor, that to the extent the consideration for the

therefore deemed waived. Burke v. Equitable Life Assur., 256 Md. 559, 563-564.

7. We note that appended to Maryland Casualty's brief are what appear to be copies of notices of federal tax liens filed on February 13, 1975, and August 29, 1975, and notice of revocation filed December 10, 1976. There was also a Proof of Claim filed in the record reciting those liens filed (and refiled) on August 29, 1975, however, this was not in evidence and should not have been included as part of the record for our review.

8. The record forwarded this Court from the Circuit Court for Calvert County contains an auditor's report and account filed in the case after the judgment appealed from and after the filing of the appeal. The report and account was ratified "except that portion which provides 'surplus to be distributed pursuant to Order of Court dated April 4, 1977' ". That is the order appealed from which we will reverse and remand for a new trial. Because no notice was provided the United States of America pursuant to Md. Rule 595 (g), or in accordance with the "W" rules, the government has now excepted to the auditor's report as has Angelos. They will be given the opportunity to participate as intervenors upon retrial as well. Procedurally then, upon reversal of the original case here on appeal, the guidance we hope to provide by reaching the issues may aid the trial court upon hearing the exceptions to the auditor's report and accounting, or upon retrial of the case here appealed, or both — if that becomes necessary.

Angelos mortgage consisted of his past services, Angelos' claim would prevail over the government liens. This is so because except for liens subsequently discharged, the only liens filed or refiled by the government came not only after Angelos' mortgage was executed, but after it was recorded as well. The Internal Revenue Code, I.R.C. § 6323 (a), clearly states that the lien imposed by § 6321 is not valid as against a "holder of a security interest," until notice of the lien has been filed. "Security interest" is defined as meaning

> " . . . any interest in property acquired by contract for the purpose of securing payment or performance of an obligation or indemnifying against loss or liability. A security interest exists at any time (A) if, at such time, the property is in existence and the interest has become protected under local law against a subsequent judgment lien arising out of an unsecured obligation, and (B) to the extent that, at such time, the holder has parted with money or money's worth." § 6323 (h) (1).

Thus the Angelos mortgage is a security interest that protects Angelos to the extent that he had provided services prior to the filing of notice of the tax lien on August 29, 1975. Furthermore, Angelos may be protected for the value of his services rendered for 45 days thereafter, depending upon a factual finding of whether he had knowledge of the filing. 26 U.S.C. § 6323 (d); see Legislative History, (1966) U. S. Code Cong. & Ad. News 3730-3731.

It would appear that Maryland Casualty's interest in the $54,646.34 surplus from the Union Trust Company's second mortgage foreclosure sale is subordinate to the United States' as well as Angelos'. Maryland Casualty contends that the United States lacks power to attach a tax lien to the property at issue because it, in effect, stands in the shoes of the taxpayer, who retains only so much of an interest in the property as would exist after all encumbrances upon the property had been satisfied. Appellee continues its argument by stating that "the determination of what is 'property' and 'rights to property' is a question to be determined by State

Law," citing *Aquilino v. United States,* 363 U. S. 509, and claiming that under Maryland law, the taxpayer-owner's property interest in the surplus from the foreclosure sale is subject to the rights of other lienors and encumbrances, of which Maryland Casualty is one. Therefore, since Maryland Casualty has a judgment lien amounting to more than the total amount of the sale proceeds (the judgment lien being good as of the date of filing suit, under the doctrine of lis pendens), the taxpayer retains no property interest; and if the taxpayer has no property interest, then the United States has nothing to which its lien can attach.

Unfortunately for appellee, every step in its circuitous argument is flawed. In the first instance, the Maryland Legislature has intentionally elected to utilize federal law in determining the meaning of "real property" with respect to federal tax liens. See Comment to Former Article 21, Title 3, Subtitle 4 preceding Real Prop. Art., § 3-401. Even if Maryland law were applicable in determining what the property rights of the *taxpayer* are, it would not necessarily be applicable in defining the property interests of *lienors.* On the contrary, as will be seen, those interests appear to be well defined by a long line of established case decisions. Finally, appellee's erroneous conclusion must give us pause as it is so obviously founded upon a false premise. If the taxpayer has no property to which a federal tax lien can attach under Maryland law, how is it that there is property to which Maryland Casualty can attach a judgment lien under Maryland law? Obviously, regardless of what law is applied, the determination of what property or rights to property the taxpayer has is to be made at the time the lien attaches, and not at the time it ripens into a collectable debt. Once the lienors are entitled to recover on their encumbrances, the question becomes simply one of priorities.

In order for Maryland Casualty to have priority over the United States, Maryland Casualty's judgment would have to have been choate prior to the filing of the tax liens. That means that the identity of the lienor, the amount of the lien and the property subject thereto must all have been established before the filing. *United States v. City of New*

*Britain, Conn.,* 347 U. S. 81. While holding that an attachment lien is not adequately specific or perfected until ripened into a judgment, the Supreme Court has equated such "inchoate or contingent" imperfection to "merely a lis pendens notice that a right to perfect a lien exists." *United States v. Security Trust and Savings Bank,* 340 U. S. 47. It follows that lis pendens cannot be classified as a choate lien, see also *City of New Britain, supra,* and like an attachment or garnishment, is not perfected until it has ripened into a judgment. *United States v. Liverpool and London and Globe Ins. Co., Ltd.,* 348 U. S. 215; *United States v. Security Trust and Savings Bank, supra.*

It would appear as a practical consideration then, that unless Maryland Casualty can prove that it comes within one of the exceptions of § 6323 (b) or (c), whatever the division is determined to be between Angelos and the United States, it will have nought remaining of the $54,646.34 of which it can avail itself. This will probably be true notwithstanding the result of the additional factual determination regarding the amount of the tax lien.

That determination becomes necessary because the original tax liens filed on February 13, 1975 for the tax periods ending December 31, 1971 and 1972 were withdrawn or discharged on December 10, 1976. On August 29, 1975 they were refiled with accumulated interest, along with additional liens for the tax periods ending December 31, 1973 and 1974. None of these liens were presented evidentiarily to the court; however, it is apparent from the colloquys between court and counsel in the record (recognizing the liens on the one hand and representing that the tax claim had been released on the other) that both court and counsel were aware of them. Such issue may be raised upon retrial or at a hearing upon the exceptions filed or to be filed, but without adequate facts in the record we will not decide those factual questions which were not "plainly tried and decided" by the lower court. Md. Rule 1085. Therefore we express no opinion upon the validity of any lien, yet neither do we by this opinion foreclose that issue is being raised. Since the proceedings will be retried *ab ovo* to permit the full participation of the intervenor, it will be

entitled to raise whatever issues to which it would have been entitled as an initial party. Parenthetically, neither Angelos nor Maryland Casualty should be precluded from amending its pleadings within the rules to assert whatever actions or defenses may be appropriate, notwithstanding any waiver for purposes of this appeal. See, *e.g.,* n. 6, par. 2.

## Summary of Priorities

The Angelos recorded mortgage having been executed July 18, 1975, prevails over the Maryland Casualty Company's judgment of February 2, 1977, as do all valid tax liens filed before the judgment was perfected. To the extent the Angelos mortgage is a "security interest," (*i.e.,* to the extent the mortgage was in consideration for Angelos' past services), it prevails over the tax lien. In the absence of Angelos' knowledge of the filing of tax liens, his mortgage prevails for services rendered through the forty-fifth day after the tax liens were filed.

The court at the hearing upon the exceptions to the auditor's report or upon retrial of this case must determine the following questions:

1. Whether valid tax liens had been filed and, if so, upon what date.

2. Whether Maryland Casualty can take priority over the claims of the United States by coming within any exception outlined in § 6323 (b) or (c) of the Internal Revenue Code, bearing in mind that Maryland Casualty's claim, as regards the intervenor, is from time of judgment, not from time of institution of suit. Assuming the date to be as alleged, August 29, 1975, (which was after both execution and recordation of the Angelos mortgage), in order to determine the amount of Angelos' priority over the United States (should the United States prevail over Maryland Casualty), the court must determine:

(a) How much value (by service or otherwise) Angelos had provided the

DeVaughns in consideration for the third mortgage *prior* to the date the tax liens were filed.

(b) Whether Angelos as counsel for the DeVaughns, or in any other capacity, "had actual notice or knowledge" of the filing of the tax liens, and, if so, precisely when was the knowledge acquired; and

(c) Based upon that finding, how much value was given by Angelos within forty-five days after filing or until he actually knew of the filing, whichever first came to pass.

(d) The value of the services given to the DeVaughns by Angelos prior to the filing of tax liens, plus the value of whatever services were rendered by Angelos for the DeVaughns before knowledge of the tax lien filing, within forty-five days of filing, constitutes Angelos' priority. The balance of the surplus (which appears from the auditor's report in the record to be $54,646.34), is subject to a second priority to the United States of America to the extent of any valid tax liens filed prior to the final judgment of Maryland Casualty Company against the DeVaughns (February 2, 1977).

3. Any other factual findings necessary for determination of all of the issues raised, or to be raised by amendment or supplemental pleadings.

> *Judgment entered upon order of April 4, 1977, reversed.*
> *Case remanded for a new trial.*
> *Costs to be paid by appellee Maryland Casualty Company.*

## APPENDIX

*CHRONOLOGY*

1. 8/13/71—DeVaughns purchase property in Calvert Co.
2. 8/13/71—DeVaughns execute 1st mortgage to Calvert Bank
3. 11/6/73—Affiliated Contract Consultants execute application for bond to Md. Casualty
4. 1/25/74—DeVaughns execute Blanket Indemnity Agreement with Md. Casualty
5. 5/13/74—DeVaughns execute 2nd mortgage to Union Trust
6. 2/13/75—IRS files Notice of Tax Lien in Calvert Co. Cir. Ct.
    i. T/P*end. 12/31/71; D/A**1/24/75 $165,367.71
    ii. T/P*end. 12/31/72, D/A**1/24/75 172,902.42
    $338,270.13
    (note: these subsequently discharged 12/10/76)
7. 7/18/75—DeVaughns execute 3rd mortgage to Angelos
8. 7/23/75—Md. Casualty files bill of complaint against DeVaughns based on Indemnity Agreement
9. 7/24/75—Md. Casualty petitions for injunction against DeVaughns
10. 7/25/75—Court issues injunction restraining DeVaughns from transferring property
11. 8/27/75—Angelos records 3rd mortgage
12. 8/29/75—IRS Notice of Tax Lien refiled with added interest for:
    i. T/P*end. 12/31/71, D/A**8/28/75 $169,401.13
    ii. T/P*end. 12/31/72, D/A**8/28/75 177,277.14
    $346,678.27
    initially filed for:
    iii. T/P*end. 12/31/73, D/A**5/5/75 22,391.19

iv. T/P*end. 12/31/74, D/A**6/16/75
13,141.69
$35,532.88

13. 1/5/76—Union Trust petitions for foreclosure of 2nd mortgage
14. 11/30/76—Property sold to Healy, Angelos' agent, for $80,000.
15. 12/10/76—IRS releases liens of 2/13/75
16. 1/31/77—Sale ratified.
17. 2/2/77—Court orders that Md. Casualty recover $690,357 from DeVaughns — Judgment
18. 2/3/77—Angelos moves to have surplus applied to 3rd mortgage
19. 2/4/77—Md. Casualty moves to have surplus applied to its judgment
20. 2/14/77—IRS files proof of claim in this case
21. 3/2/77—DeVaughns appeal Md. Casualty (2/2/77) judgment (case transmitted to C/S/A***4/4/77)
22. 3/14/77—Court opinion in instant case — in favor of Md. Casualty
23. 4/4/77—Court order and judgment
24. 4/12/77—Angelos appeals to this Court
25. 4/19/77—Auditor's Report and Account

---

* Tax Period Ending
** Date of Assessment
*** Court of Special Appeals