KINGSLEY, ET AL, v. MAKAY, ET AL.

[No. 168, September Term, 1968.]

*Decided April 1, 1969.*

---

5. John Lyly, *Euphues* [1579] (Arber's Reprint) p. 107.

*Motion for rehearing filed May 1, 1969; denied May 26, 1969.*

The cause was argued before HAMMOND, C. J., and BARNES, McWILLIAMS, FINAN and SMITH, JJ.

*Alfred W. Spates*, with whom was *Daniel B. Wiegers* on the brief, for appellants.

*Joseph Forer* for appellees.

McWILLIAMS, J., delivered the opinion of the Court.

The alienability of an equitable interest in realty is the topic of this causerie. Appellants argue that if an equitable interest is created by a recorded instrument, even though recording is not required, it can be transferred only by another recorded instrument. The trial judge (Shook, J.), with whom we agree, held to the contrary. There seems to be no significant controversy about the facts.

In March 1963, Margaret Dorsey agreed, in writing, to sell to Joe Bolt, Jr. (Bolt) and the appellees,[1] her 107 acre farm, near Old Germantown, in Montgomery County. A down payment of $5,000 on account of the $105,000 purchase price was required and the buyers were given five years to pay an additional $25,000, after which Mrs. Dorsey agreed to convey title and take back a $75,000 purchase money mortgage. The agreement was recorded a week later.

In May the buyers agreed in writing in regard to the quanta of their respective interests. Bolt's interest was 20%. In March 1964, after Bolt sold 25% of his 20% interest to appellee Rein, a supplemental agreement was executed showing a decrease in Bolt's interest to 15% and a corresponding increase in Rein's interest. In July 1964 a similar transaction evidenced by a second supplemental agreement reduced Bolt's interest to 10%. In February 1965 Bolt sold his remaining 10% to one of the original buyers and one (Trapp) who had just joined the venture. All of this was evidenced by a third supplemental agreement. None of the three supplemental agreements was recorded. From and after the third supplemental agreement Bolt no longer had any interest in the property. He received a total of $16,400 for the 20% interest which had cost him only $2,775.

In March 1966, more than a year after Bolt had completely disposed of his interest in the property, the appellant Kingsley obtained a judgment against him for $11,320. At the same time the appellant Day obtained a judgment for $3,200.

---

1. The appellee Trapp did not join the venture until after July 1964.

In May 1967, $30,000 having been paid on account of the purchase price, the appellees called upon Mrs. Dorsey to convey to them title to the property subject, of course, to the purchase money mortgage of $75,000. She refused on the ground that the judgments against Bolt might be a cloud on her title as mortgagee. The appellees were refused title insurance for the same reason.

In July 1967 they filed a bill of complaint in the Circuit Court for Montgomery County against Mrs. Dorsey and the five judgment creditors of Bolt (only two, Kingsley and Day, have appealed), seeking the specific performance of their contract and a declaration that the judgments are not liens on the property. In January 1968 Mrs. Dorsey, having obtained a quitclaim deed from Bolt and his wife, conveyed the property to the appellees whereupon they dismissed, in March 1968, as to her, with prejudice, their bill of complaint.

The case came on for a hearing on appellees' motion for summary judgment, before Judge Shook, on 29 March 1968. On 17 May she filed a decree declaring the judgments not to be liens or encumbrances. As we have said, only Kingsley and Day have appealed.

It has long been established that a purchaser of land under a contract of sale acquires, not a legal title, but an equitable title. *Stebbins-Anderson Co. v. Bolton,* 208 Md. 183, 117 A. 2d 908 (1955), and the cases cited therein. The legal title to land, of course, does not pass, other than by operation of law, until a deed is properly executed and recorded. Code, Art. 21 § 1 (1966 Repl. Vol.) and the cases cited in the annotation thereto. That Bolt acquired only an equitable interest in the land from Mrs. Dorsey is beyond question. The obvious and surely the only reason for recording the contract of sale was to guard against the possibility that Mrs. Dorsey, during the period she was receiving $30,000 from Bolt and the appellees, might attempt to convey the property to some third person. *See Condry v. Laurie,* 184 Md. 317, 320, 41 A. 2d 66 (1945) ; *Bourke v. Krick,* 304 F. 2d 501 (4th Cir. 1962) ; *United States v. Gallas,* 269 F. Supp. 141 (D. Md. 1967). The recording of the contract, however, did not transform Bolt's equitable title into a legal

title. In *Westpark, Inc. v. Seaton Land Co.*, 225 Md. 433, 452, 171 A. 2d 736 (1961), it was said:

"\* \* \* Contracts for the conveyance of real estate, or any interest therein, are not required to be recorded by our recording statutes, although Code, Art. 21 § 26, permits them to be recorded if they have been executed and acknowledged in the same manner as deeds. It has not been the custom in this State to record such contracts \* \* \*."

Even granting the permissibility of the recording of the paper writings by means of which Bolt accomplished the transfers of his equitable interest in the property, we know of no statute which makes the validity of those transfers dependent upon recording. *See Stebbins-Anderson Co. v. Bolton, supra* at 190. Nor was recording of the transfers necessary to make them binding between the parties or to make the interests thereby transferred invulnerable to the lien of subsequent judgments against Bolt. *See Caltrider v. Caples,* 160 Md. 392, 153 A. 445 (1931) ; *Cramer v. Roderick,* 128 Md. 422, 98 A. 42 (1916) ; *Johnson v. Casper,* 75 Idaho 256, 270 P. 2d 1012 (1954). The lien of a judgment attaches only upon that which is the debtor's property at the time it is entered or upon any property he thereafter acquires. *Caltrider v. Caples, supra; Kinsey v. Drury,* 146 Md. 227, 126 A. 125 (1924) ; *Dyson v. Simmons,* 48 Md. 207 (1878) ; *Redman v. Biewer,* 78 N. D. 120, 48 N.W.2d 372 (1951). In *Dyson v. Simmons* it was said:

"The judgment creditor therefore stands in the place of his debtor, and he can only take the property of his debtor, subject to the equitable charges to which it was justly liable in the hands of the debtor, at the time of the rendition of the judgment,—except in those cases where the principle may have been modified by express statute. *Taylor v. Wheeler, 2 Vern.* 565 ; *Finch v. Winchelsea,* 1 P. Wms. 277, 282 ; *Stewart's Case,* cited in *Burn v. Burn, 3 Ves.* 573, and stated and approved in *Alexander v. Ghiselin, 5 Gill,* 185." *Id.* at 215-16.

It can scarcely be said that the appellees are not bona fide purchasers. That Bolt made a handsome profit on the transaction has not been controverted; from his original investment of $2,775 he grossed $16,400. Whether his co-venturers eventually did as well is not revealed by the record. His judgment creditors have really nothing to complain about but their own procrastination in reducing their paper to judgment. After all it took Bolt about two years to divest himself entirely of his equitable interest and the appellants did not obtain their judgments until a year or more after Bolt had sold out.

*Decree affirmed.*
*Costs to be paid by appellants.*