· 974 A.2d 376

## WASHINGTON MUTUAL BANK

v.

Susie M. HOMAN et al.

No. 1586, Sept. Term, 2008.

Court of Special Appeals of Maryland.

June 12, 2009.

374

Robert A. Scott (Lisa M. Welsh, Ballard Spahr Andrews & Ingersoll, LLP on the brief), Baltimore, for appellant.

E. Andrew Cole (Donald N. Sperling, Stein, Sperling, Bennett, DeJong, Driscoll & Greenfeig, PC, on the brief), Rockville, for appellee.

Panel: DAVIS, MEREDITH, LAWRENCE F. RODOWSKY, (Retired, Specially Assigned), JJ.

DAVIS, J.

On January 29, 2008, appellees, Susie M. Horman and Janice T. Kruger, filed a multi-count complaint in the Circuit Court for Montgomery County against several defendants, including appellant, Washington Mutual Bank. Count Three of appellees' complaint asked the circuit court to nullify a conveyance of property from Homes by New Century, LLC (HBNC), to Edward Moriarty,[1] HBNC's sole member, and declare void all subsequent interests based on this conveyance, including a deed of trust granted by Moriarty to appellant. Count Two of

---

1. Neither Moriarty nor HBNC are parties to this appeal.

the complaint requested the court to issue an order to quiet title to the property by determining that appellees had superior equitable and legal title to the property over all other defendants[2] in the action and ordering the release of all associated liens and encumbrances.

On June 26, 2008, appellees filed a motion for partial summary judgment as to Counts Two and Three of the complaint. Appellant opposed appellees' motion and filed a cross motion for summary judgment on July 14, 2008. Additionally, on July 18, 2008, appellant filed cross claims against HBNC and Moriarty.

On August 21, 2008, the circuit court granted partial summary judgment in favor of appellees, nullifying the conveyance of property from HBNC to Moriarty and ordering HBNC to convey legal title to appellant, free and clear of any claims of the named defendants in the lawsuit. The court denied appellant's cross motion for summary judgment. Appellant appeals[3] from this August 21, 2008 order, pursuant to § 12–303(3)(v) of the Courts and Judicial Proceedings Article[4] and

2. Along with appellant, appellees' complaint named various other defendants who were alleged to have liens or encumbrances on the subject property.

3. On February 17, 2009, we granted appellant's Emergency Motion for Stay Pending Appeal, thus staying enforcement of the court's order, as it relates to conveyance of the property, pending further order of this Court.

4. The circuit court's order granting appellees' motion for summary judgment was not a final judgment, in light of the remaining counts in appellees' complaint and appellant's pending cross claim against HBNC and Moriarty. *See* Md. Rule 2–602(a)(1) (providing that a judgment is not final if it adjudicates fewer than all the claims in an action or less than an entire claim); Md.Code Ann. (2006 Repl.Vol., 2008 Supp.), Cts. & Jud. Proc. (C.J.), § 12–301 (providing for right of appeal from final judgments). However, the circuit court's order granting appellees' motion for summary judgment in this case is appealable under C.J. § 12–303(3)(v), which provides for an appeal from an order for the conveyance of real property. As we shall later explain, the court's denial of appellant's cross motion for summary judgment is not appealable.

presents two questions for our review,[5] which we have re-phrased and reorganized as follows:

I. Did the circuit court err by granting appellees' motion for partial summary judgment when the motion was not supported by an affidavit made upon personal knowl-edge of the affiant?

II. Did the circuit court err by granting appellees' motion for partial summary judgment and extinguishing appel-lant's deed of trust to the property?

III. Did the circuit court err by granting summary judg-ment on appellees' quiet title claim?

IV. Did the circuit court err by denying appellant's motion for summary judgment?

For the reasons that follow, we answer the first question in the negative and the second and third questions in the affir-mative. Thus, we reverse the judgment of the circuit court awarding summary judgment in favor of appellees and remand for further proceedings consistent with this opinion. As to the fourth question, we hold that the circuit court's denial of appellant's summary judgment motion is not appealable. Ac-cordingly, we dismiss appellant's challenge to the denial of its cross motion for summary judgment.

## FACTUAL & PROCEDURAL BACKGROUND

The material facts of this case are largely undisputed. On March 29, 2004, appellees entered into a contract with HBNC

---

**5.** Appellant originally presented the following questions:

I. Whether the circuit court erred in granting summary judgment in favor of [appellees] and failing to enter summary judgment in favor of [appellant] because:

A. The circuit court extinguished a deed of trust that had been ob-tained before a *lis pendens* was established on the property;

B. The interest of a *bona fide* lender for value without notice is superior to that of a contract purchaser; and

C. [Appellees] did not have (and failed to allege) possession of the property, and therefore could not maintain an action for quiet title.

II. Whether the circuit court erred in granting [appellees'] motion for summary judgment where the motion was not supported by an affidavit based on personal knowledge.

to purchase property located at 11222 Valley View Avenue in Kensington, Maryland (the Property), at a purchase price of $658,450. The contract obligated HBNC to build a new home on the Property and convey the Property to appellees by a settlement date of September 30, 2004.[6] Over the course of several months past the scheduled settlement date, however, HBNC postponed the final settlement date due to purported financial problems.

■ On April 12, 2007, appellees filed suit against HBNC (original lawsuit) in the Circuit Court for Montgomery County, requesting that the court order specific performance on the contract. Appellees further filed a notice of *lis pendens* in the circuit court on the following day.[7] On October 15, 2007, the circuit court awarded summary judgment in favor of appellees, appointing a trustee to facilitate the transfer of the Property, setting the settlement price at $556,087.33 and ordering that settlement on the Property take place within ninety days of the order.

Unbeknownst to appellees or the court, HBNC had already conveyed the Property in consideration of the sum of ten dollars to HBNC's managing member, Moriarty, by way of a quitclaim deed acknowledged on August 11, 2006–approximately eight months *before* appellees filed the original law suit. The quitclaim deed was accompanied by an "Affidavit of Termination of [HBNC]," in which Moriarty attested that

---

6. In their appellate brief, appellees assert that the Property was to be conveyed within nine months of the date of the contract. The exact date of settlement is immaterial to our holding.

7. The doctrine of *lis pendens*, which has its roots in the common law, literally means a pending action; the doctrine derives from the jurisdiction and control which a court acquires over property involved in an action pending its continuance and until final judgment is entered. Under the doctrine, one who acquires an interest in the property pending litigation relating to the property takes subject to the results of the litigation.
 *Greenpoint Mortgage Funding, Inc. v. Schlossberg,* 390 Md. 211, 223, 888 A.2d 297 (2005) (quoting *Angelos v. Md. Cas. Co.,* 38 Md.App. 265, 268, 380 A.2d 646 (1977)). The doctrine is procedurally addressed in Maryland Rule 12–102.

HBNC conveyed its entire interest in the Property to Moriarty as the "sole owner" of HBNC and that, as a result of this conveyance, HBNC "has been terminated." Appellant, on the same day, extended a loan of $625,000 to Moriarty, which was secured by a deed of trust on the Property.[8] Neither the deed of trust nor the quitclaim deed, however, was recorded in the Montgomery County land records until December 14, 2007, or (1) more than one year and four months after the deed of trust was granted to appellant and (2) more than two months after the circuit court ordered HBNC, in the original lawsuit, to convey the property to appellees.

Appellant doggedly maintains that it did not know—and had no way of knowing—of the existence of the sales contract between HBNC and appellees when Moriarty granted the deed of trust to appellant. Appellees never recorded their sales contract among the land records, nor, as noted, did they file suit against HBNC until April 12, 2007–more than eight months after appellant secured its deed of trust on the Property.

Appellees, for their part, maintain that they only became aware of appellant's deed of trust, as well as several liens and encumbrances against the Property, on December 21, 2007, when they performed a title search in preparation for the settlement scheduled to take place, pursuant to the order issued in the original lawsuit. According to appellees, at no time during the litigation of the original lawsuit did Moriarty disclose the existence of appellant's deed of trust. In addition, despite the affirmation HBNC made as to its termination in the "Affidavit of Termination of [HBNC]," discussed *supra*, HBNC appeared *as a party* in the original lawsuit.

Appellees filed the instant action against appellant, Moriarty, HBNC and other defendants asserting liens on the Property to establish appellees' superior equitable and legal title to the Property, enjoin appellant from foreclosing upon the Prop-

---

**8.** Appellant asserts that a substantial part of this loan was applied at settlement to outstanding loans secured by two other lenders with deeds of trust on the Property.

erty, void the conveyance of the Property by HBNC to Moriarty, void any interests acquired in the Property subsequent to the conveyance of the Property from HBNC to Moriarty and release all liens and encumbrances on the Property. Particularly material to this appeal are the allegations set forth in Counts Two and Three of the complaint. Count Two was set forth as follows:

### COUNT TWO

(Quiet Title)

54. [Appellees] adopt paragraphs 1–53 above as though fully set forth herein.

55. This action is brought pursuant to Md.Code Ann. Real Prop. § 14–108.

56. [Appellees] have equitable title to the Property by virtue of the Contract, dated March 29, 2004, and their Notice of *Lis Pendens* filed April 13, 2007.

57. Before [appellees] could purchase the Property, and without [appellees'] knowledge or consent, Defendant HBNC, through its managing member, Defendant Edward Moriarty, fraudulently transferred its entire interest in the Property to Defendant Edward Moriarty in his individual capacity as sole owner.

58. After the fraudulent transfer, Defendant HBNC and/or Defendant Edward Moriarty, encumbered the Property with various liens, encumbrances, and other matters affecting title to the Property.

59. As a result of the actions of Defendant HBNC and Defendant Edward Moriarty, and the various liens and/or encumbrances affecting title to the Property as set forth above, [appellees'] sole interest in the Property has been denied and/or is in dispute.

60. Without an order of this Court quieting title, [appellees] are unable to acquire unencumbered, good and marketable title to the Property.

61. [Appellees] have equitable title in the Property and superior lien rights to the Property pursuant to Md.Code Ann., Real Prop., § 3–201, *et seq.* because they entered into the Contract on March 29, 2004 to purchase the Property, and because they filed their Notice of *Lis Pendens* on or about April 13, 2007.

WHEREFORE, [appellees] respectfully request that this Honorable Court enter judgment to Quiet Title to the Property determining that [appellees] have superior equitable and legal title in the Property over all defendants in this action, order the immediate release of all liens/encumbrances to the Property, order the Property immediately to convey to [appellees] without any liens/encumbrances, within no later than forty[-five] (45) days from the date of the order pursuant to the terms set forth in Judge Boynton's October 15, 2007 Order in the Underlying Case, and provide for such other relief as this Honorable Court deems just and proper.

Count Three mirrored, in many respects, the relief requested in Count Two:

## COUNT THREE

(Complaint to Nullify Fraudulent Conveyance—Defendant HBNC and Defendant Edward Moriarty)

62. [Appellees] adopt paragraphs 1–61 above as though fully set forth herein.

63. On March 29, 2004, [appellees] entered into the Contract with Defendant HBNC to purchase the Property.

64. On or about August 11, 2006, and without [appellees'] knowledge or consent, Defendant HBNC, through its "alter ego" and managing member, Defendant Edward Moriarty, fraudulently conveyed its entire interest in the Property to Defendant Edward Moriarty in his individual capacity as sole owner. Defendant HBNC and Defendant Edward Moriarty did so in an attempt to defraud [appellees] and to prevent them from being able to acquire their contracted for property.

65. After the fraudulent conveyance, Defendant HBNC and/or Defendant Edward Moriarty, encumbered the Property with various liens, encumbrances, and other matters affecting title to the Property.

66. The transfer from Defendant HBNC to Defendant Edward Moriarty in his individual capacity as sole owner, and the encumbrances subsequent thereto, were fraudulent and has prevented [appellees] from acquiring unencumbered, good and marketable title to the Property.

WHEREFORE, [appellees] respectfully request that this Honorable Court set aside the August 11, 2006 conveyance of the Property from Defendant HBNC to Defendant Edward Moriarty in his individual capacity as sole owner and declare all subsequent interests based on this conveyance as void; determine that [appellees] have superior equitable and legal title in the Property over the Defendants; order the immediate release of all liens/encumbrances to the Property; order the Property [sic] to immediately convey to [appellees] without any liens/encumbrances; and provide such other and further relief as this Honorable Court deems just and proper.

On February 26, 2008, the court, upon consent of the parties, issued a preliminary injunction enjoining the defendants, including appellant, from selling, conveying, encumbering or foreclosing upon the Property until further order of the court.

On June 26, 2008, appellees moved for partial summary judgment on Counts Two and Three of their complaint. Appellees contended that they obtained equitable title to the Property when the sales contract was executed. Relying heavily on the decision of the Court of Appeals in *Himmighoefer v. Medallion*, 302 Md. 270, 487 A.2d 282 (1985), appellees further asserted that any other interest in the Property acquired by appellant, subsequent to the execution of appellees' sales contract with HBNC, could not affect their right to acquire legal title to the Property. In appellees' view, because HBNC was obligated to transfer legal title to the Property to

them, appellant's August 11, 2006 deed of trust conveyed no legally cognizable interest in the Property.

Appellant opposed appellees' motion for partial summary judgment, arguing that it was "based upon a misunderstanding of Maryland real property law." In its cross motion for summary judgment as to all counts, it set forth the same grounds upon which it based its opposition to appellees' motion, asserting that it occupied the role of a *bona fide* lender for value without notice as to the sales contract between appellees and HBNC and specifically placing great weight on the fact that Moriarty granted the deed of trust to appellant well before appellees filed the original lawsuit. Appellant therefore acquired title, it deduces, free and clear of appellees' competing claim to title. In addition, appellant, citing to § 3–201 of the Real Property Article,[9] argued that, although the deed of trust was only recorded on December 14, 2007, once it was recorded, it became effective as of the date of its delivery or acknowledgment, which was August 11, 2006, "months *before* [appellees] provided constructive notice to the world of their claim to the Property by filing the Original Lawsuit on April 12, 2007." Appellant asserts that the *Himmighoefer* decision protects a contract purchaser from judgments entered against the seller *after* the contract is executed and not, as in the case of the instant appellees, as against the conveyance of property to a *bona fide* purchaser or lender for value that takes title without notice of the existing contract. Thus, according to appellant, even if the court were to void the conveyance from HBNC to Moriarty, appellant's mortgage against the Property was enforceable and superior to appellees' claim of equitable title as contract purchasers.

Appellant further alleged that appellees' motion was defective because it was not accompanied by an affidavit attesting that the facts contained therein were based upon the personal knowledge of the affiant. Finally, appellant asserted that

9. Unless otherwise specified, any discussion of the Real Property Article in this opinion shall refer to Md.Code Ann. (2003 Repl. Vol., 2008 Supp.), Real Property (R.P.).

appellees' claim to quiet title was legally deficient because appellees failed to allege actual or constructive possession of the Property, pursuant to R.P. § 14–108.

The circuit court, in granting summary judgment to appellees, opined:

All right. Well, as I say it's a real interesting set of facts, and we try to consider all of that. I think, frankly, that *[appellant ] sat on its rights by not recording its security interest.* And I think [appellant] was on notice to, you know, certainly had an obligation to follow up and see, you know, why it was that they didn't get a recorded deed of trust back from somebody. It took them a year and a half to record that and to record the deed. *Somebody should have followed up on that file to see where those instruments were and had they been recorded, because Maryland is a notice jurisdiction.* And, while the purchasers didn't have an obligation to record their contract, the fact is that they did have a lawsuit that they filed, albeit it after, apparently, an arrangement was made with [appellant], but they weren't on notice of that.

*And [appellant] was on record notice if someone had run the title, and, you know, before their deed was recorded it would have been clear.* You know, this lawsuit would have shown up and the court order would have shown up.

*If [appellant] had recorded its interest back in August of '06, there's no question in my mind that they would have been secure and they would have had priority, but I think by not recording it until '07, I think they 're stuck with what happens in between, and that is that there's been an intervening court order affecting this property based on the lawsuit.*

So, I am going to order that summary judgment be entered. I don't think there's a genuine dispute as to a material fact with regard to the equitable title and the conveyance. What I am going to do, though, is I'm going to spell out in the order that the proceeds are to be deposited

into the Registry of Court subject to determination of the respective interests of the defendants.

So, I'm going to sign the order to that effect.

\* \* \*

So, I'm going to grant the motion for partial summary judgment. And I realize that Mr. Moriarty is basically the wrongdoer here who ultimately, I guess, everybody has to look to to figure out, you know, how all this thing went down. But everybody who deals with him and transacts business, you know, is bound by the notice requirements that would apply, and they're kind of stuck with where they fall under that priority.

(Emphasis added).

The court ultimately issued an order, entered on August 26, 2008, that (1) granted appellees' motion for partial summary judgment on Counts Two and Three of their complaint; (2) declared that appellees held equitable title to the Property; (3) nullified the August 11, 2006 conveyance of the Property from HBNC to Moriarty; (4) specified that HBNC held legal title to the Property in trust for appellees; and (5) mandated that the Property "be conveyed from Defendant HBNC to [appellees] free and clear of any claims of Defendants in this lawsuit and pursuant to the terms of this Court's October 15, 2007 order in *Susie Homan, et. al, v. Homes by New Century, et. al civil number 281632.*" The court further ordered that any net proceeds of the sale pursuant to the contract were to be paid into the registry of the court, where they would be held pending a determination of the competing claims of the defendants, including any claims by appellant.

## STANDARD OF REVIEW

A trial court may grant summary judgment where the motion for summary judgment, and any opposition thereto, establish that there is no dispute as to any material fact and that the party in whose favor judgment is entered is entitled to judgment as a matter of law. Md. Rule 2–501(f). A trial

court's disposition of summary judgment motions is subject to *de novo* review on appeal. *Property & Casualty Ins. Guar. Corp. v. Yanni*, 397 Md. 474, 480, 919 A.2d 1 (2007); *Standard Fire Ins. Co. v. Berrett*, 395 Md. 439, 450–51, 910 A.2d 1072 (2006). " 'The standard of appellate review, therefore, is whether the trial court was legally correct.' " *Remsburg v. Montgomery*, 376 Md. 568, 579, 831 A.2d 18 (2003) (quoting *Williams v. Mayor & City Council of Baltimore*, 359 Md. 101, 114, 753 A.2d 41 (2000) (citations omitted)). Where there are no material facts in dispute, we must determine if summary judgment was properly entered as a matter of law. *Property & Casualty Ins. Guar. Corp.*, 397 Md. at 480–81, 919 A.2d 1; *Standard Fire Ins. Co.*, 395 Md. at 451, 910 A.2d 1072.

 On appeal from the entry of summary judgment, we review " 'only the grounds upon which the trial court relied in granting summary judgment.' " *Property & Casualty Ins. Guar. Corp.*, 397 Md. at 480–81, 919 A.2d 1 (quoting *Standard Fire Ins. Co.*, 395 Md. at 450, 910 A.2d 1072) (citations omitted); *Lovelace v. Anderson*, 366 Md. 690, 695, 785 A.2d 726 (2001); *Garval v. City of Rockville*, 177 Md.App. 721, 728, 938 A.2d 51 (2007). However, " 'if the alternative ground is one upon which the circuit court would have had no discretion to deny summary judgment, summary judgment may be granted for a reason not relied on by the trial court.' " *Ragin v. Porter Hayden Co.*, 133 Md.App. 116, 134, 754 A.2d 503 (2000) (citations omitted). "When a motion is based solely upon 'a pure issue of law that could not properly be submitted to a trier of fact,' then 'we will affirm on an alternative ground.' " *Id.* (quoting *Davis v. Goodman*, 117 Md.App. 378, 395 n. 3, 700 A.2d 798 (1997)).

## LEGAL ANALYSIS

Appellant raises a number of challenges to the circuit court's rulings with respect to the parties' motions for summary judgment. We address those challenges *seriatim.* We begin by observing that there is no dispute about the following material facts: (1) appellees entered into a sales contract with

HBNC for the Property on March 29, 2004; (2) HBNC subsequently conveyed the property, by quitclaim deed, to Moriarty; (3) Moriarty granted appellant a deed of trust to the Property on August 11, 2006; (4) appellees filed the original lawsuit on April 12, 2007; (5) appellees obtained judgment in that original lawsuit on October 15, 2007; (6) appellant recorded the deed of trust in the Montgomery County land records on December 14, 2007; and (7) appellees became aware of the existence of the recorded deed of trust around December 21, 2007, prior to settlement on the Property.

## I

### Affidavit Requirement

Appellant argues that the circuit court erred by granting appellees' motion for partial summary judgment even though the motion was "not supported by affidavits made on personal knowledge." Although appellees' summary judgment motion was accompanied by a copy of their Verified Complaint, which included documents signed by both appellees stating, "I do solemnly declare and affirm under the penalties of perjury that the above statements are true to the best of my knowledge, information and belief," that statement, according to appellant, was insufficient to satisfy the affidavit requirement of a motion for summary judgment.

We hold that, under the circumstances of this case, appellees were not required to support their summary judgment motion by affidavit. We explain.

Maryland Rule 2–501 provides, in pertinent part:

(a) **Motion.** Any party may make a motion for summary judgment on all or part of an action on the ground that there is no genuine dispute as to any material fact and that the party is entitled to judgment as a matter of law. The motion shall be supported by affidavit *if* it is (1) filed before the day on which the adverse party's initial

pleading or motion is filed or (2) based on facts not contained in the record.

\* \* \*

**(c) Form of affidavit.** An affidavit supporting or opposing a motion for summary judgment shall be made upon personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated in the affidavit.

(Emphasis added).

The moving party is always required "to support his [or her] various contentions by placing before the court facts that would be admissible in evidence or otherwise detailing the absence of evidence in the record to support a cause of action." *Bond v. Nibco, Inc.*, 96 Md.App. 127, 134, 623 A.2d 731 (1993) (*citing Washington Homes, Inc. v. Interstate Land Dev. Co., Inc.*, 281 Md. 712, 716, 382 A.2d 555 (1978)). A moving party need not support its motion by affidavit unless it is filed before the day on which the adverse party's initial pleading or motion is filed, or unless the motion is "based on facts not contained in the record or papers on file in the proceeding." *Id.* at 134–35, 623 A.2d 731; *see also* Md. Rule 2–311(d) (providing that a motion based on facts not contained in the record shall be supported by affidavit and accompanied by any papers on which it is based).

Appellees' Verified Complaint, filed on January 29, 2008, discussed and attached copies of (1) the sales contract between appellees and HBNC; (2) the October 15, 2007 order issued by the court in the original law suit; (3) the August 11, 2006 quitclaim deed; and (4) the affidavit of termination. Appellant did not dispute the legality or validity of any of these documents; in fact, appellant conceded, in its opposition to appellees' summary judgment motion, that these facts were undisputed. The Verified Complaint, along with its attachments and signed verified statements described *supra*, was attached as an exhibit to appellees' motion for summary

judgment. Appellees further attached a copy of the deed of trust granted by Moriarty to appellant, the existence of which appellant never disputed.

Appellees' pleading, and the documentary support for the facts alleged therein, were part of the record and placed before the court the facts upon which appellees' motion for summary judgment was based. Accordingly, appellees were not required to submit an additional affidavit supporting their motion for summary judgment. *See, e.g., Washington Homes,* 281 Md. at 718–19, 382 A.2d 555 (holding that the facts as admitted through pleadings and documents placed before the court were sufficient to support a party's summary judgment motion); *Cf. Vanhook v. Merchants Mut. Ins. Co.,* 22 Md.App. 22, 27, 321 A.2d 540 (1974) (explaining that "facts alleged in a pleading are not, by that means alone, before the court as facts for summary judgment" where they represent "mere allegations").[10] We perceive no error.

## II

### Enforceability of Appellant's Deed of Trust

Appellant argues that the court's order, which had the effect of voiding appellant's deed of trust, was premised on an erroneous understanding of Maryland real property law. Appellant emphasizes that its interest in the Property, conveyed by the deed of trust, is deserving of the protections extended to *bona fide* purchasers for value without notice of preexisting equities on a property, because this interest was acquired *before* appellees filed the original lawsuit. According to appellant, the fact that the deed of trust was ultimately recorded after the original lawsuit was resolved does not vitiate appellant's protected status as a *bona fide* lender or mortgagee for value *vis-a-vis* appellees, the contract purchasers, nor does it

---

**10.** In light of our holding, we need not address appellees' alternative argument that the granting of summary judgment upon a procedurally defective motion is not reversible error where there is no genuine dispute as to any material fact.

change the date upon which the deed of trust became effective, pursuant to R.P. § 3–201.

Appellees counter that they obtained equitable title to the Property when the sales contract with HBNC was executed, which could not be impaired by HBNC subsequent to the contract. Appellees further challenge appellant's application of R.P. § 3–201, arguing that appellant's logic conflicts with the purpose of Maryland's recording statute, which is intended to provide notice regarding prior conveyances of—or encumbrances on—real property.

The circuit court ultimately awarded summary judgment on the grounds that appellees' lawsuit, and the resulting court order awarding appellees legal title to the Property, occurred *before* appellant recorded its deed of trust, giving appellees a priority claim to the Property. This determination was legally incorrect. As the framework for our conclusion, we first delineate the nature of appellees' and appellant's interest in the Property.

## A

### Equitable Title

Under the doctrine of equitable conversion, a purchaser of land under a sales contract acquires equitable title to the property. *Standard Fire Ins. Co.*, 395 Md. at 454, 910 A.2d 1072; *Knight v. Princess Builders*, 393 Md. 31, 49, 899 A.2d 156 (2006); *Watson v. Watson*, 304 Md. 48, 60, 497 A.2d 794 (1985); *Himmighoefer*, 302 Md. at 279, 487 A.2d 282 (citing *Stebbins–Anderson Co. v. Bolton*, 208 Md. 183, 117 A.2d 908 (1955)); *Kingsley v. Makay*, 253 Md. 24, 27, 251 A.2d 585 (1969). Legal title to the property remains with the seller and "does not pass, other than by operation of law, until a deed is properly executed and recorded." *Kingsley*, 253 Md. at 27, 251 A.2d 585. *See also* R.P. § 3–101(a) ("Except as otherwise provided in this section, no ... deed may pass or take effect unless the deed granting it is executed and recorded."). Nonetheless, a purchaser of land, holding equitable title under the doctrine of equitable conversion, retains a signifi-

cant interest in the enforcement of a land sales contract prior to obtaining legal title. *Knight,* 393 Md. at 49, 899 A.2d 156. Consonant with that end, equitable title is deemed to be superior to a subsequent judgment against the seller:

> One result of the doctrine [of equitable conversion] is that a judgment entered against the vendor after the contract has been made does not become a lien on the realty. A vendor's judgment creditor may not execute on the realty because the vendor, sometimes described as trustee for the purchaser, has a right to the balance of the purchase money but has no beneficial interest in the property. Equitable title is superior to a later judgment lien. *See, e.g., Kingsley v. Makay,* 253 Md. 24, 251 A.2d 585 (1969) (recognizing rule and holding that judgment against original purchaser entered after original purchaser had assigned contract to buy did not establish lien on property); *Caltrider v. Caples,* 160 Md. 392, 153 A. 445 (1931); *Cramer v. Roderick,* 128 Md. 422, 98 A. 42 (1916); *Valentine v. Seiss,* 79 Md. 187, 28 A. 892 (1894); *Hampson v. Edelen,* 2 H. & J. 64 (1807).

*Watson,* 304 Md. at 60, 497 A.2d 794.

The Court of Appeals' decision in *Himmighoefer,* upon which appellees heavily rely in support of their argument that the circuit court's judgment in their favor was correct, reinforces the rule that equitable title is not subordinate to a subsequent judgment lien entered against the vendor.[11] 302 Md. at 281, 487 A.2d 282. Furthermore, as appellees point out, the reasoning of *Himmighoefer* has been reaffirmed in

---

11. In *Himmighoefer,* the purchasers of real estate acquired equitable title before a suit was instituted by creditors to establish mechanics' liens, pursuant to the Real Property Article, as to certain real estate. 302 Md. at 271, 487 A.2d 282. The Court of Appeals relied on several decisions establishing that a judgment obtained by a third person against the seller does not divest the buyer of equitable title acquired prior to the judgment by virtue of a *bona fide* contract for the sale of land, *see, e.g., Stebbins-Anderson Co. v. Bolton,* 208 Md. 183, 117 A.2d 908 (1955), *Skinner & Sons Co. v. Houghton,* 92 Md. 68, 48 A. 85 (1900) and *Hampson v. Edelen,* 2 H. & J. 64 (1807), and held that the equitable interest owned by contract purchasers of land "could not be reached" by petitions for mechanic's liens that were filed subsequent to the execution of the sales contract. *Id.* at 281, 487 A.2d 282.

subsequent cases involving liens that judgment creditors sought to attach after the execution of a contract for the sale of real property. *See, e.g., Wolf Org. v. Oles,* 119 Md.App. 357, 368–69, 705 A.2d 40 (1998); *York Roofing Inc. v. Adcock,* 333 Md. 158, 160, 170, 634 A.2d 39 (1993).

Appellees also recognize, however, that there is a critical fact distinguishing *Himmighoefer* and other similarly-decided opinions from the facts of this case. Appellant does not claim an interest in the Property as a judgment creditor of the vendor or one seeking to establish a mechanic's lien. Rather, appellant's interest stems from having acquired a deed of trust to the Property after equitable title, but before legal title, passed to appellees. Appellant contends that it thus occupies the role of a *bona fide* purchaser for value with respect to the subject Property. The *Himmighoefer* Court recognized this crucial distinction between judgment creditors and *bona fide* purchasers with regard to disputes involving prior existing equities in a property:

> "[A] judgment creditor is not in the position of a *bona fide* purchaser, and his [or her] claim is subject to prior, undisclosed equities. 'He [or she] is neither in fact nor in law a *bona fide* purchaser, and must stand or fall by the real, and not the apparent rights of the defendant in the judgment.' "

302 Md. at 280, 487 A.2d 282 (quoting *Stebbins–Anderson Co.,* 208 Md. at 187–88, 117 A.2d 908 (internal citations omitted)).

Thus, our inquiry in this case cannot be based, as appellees argue, on an assumption that, because appellees obtained equitable title to the Property, appellant could acquire no interest in the Property. Rather, we must assess what protections, if any, are afforded to appellant under Maryland law regarding *bona fide* purchasers for value.

## B

### *Bona Fide* Purchaser for Value

It is a "well-settled principle that one who purchases real property without notice of prior equities is protected as a *bona fide* purchaser for value." *Frederick Ward*

*Assocs. v. Venture, Inc.,* 99 Md.App. 251, 256, 636 A.2d 496 (1994). In *People's Banking Co. v. Fidelity & Deposit Co.,* 165 Md. 657, 664, 170 A. 544 (1934), the Court of Appeals explained that the

> essential elements of any definition of an "innocent purchaser" [12] are: (a) That he [or she] must have given value for the property; (b) that he [or she] must have dealt in good faith with respect to the purchase; and (c) without notice or knowledge of any infirmity in the title of his [or her] vendor.

In *Bourke v. Krick,* 304 F.2d 501, 504 (4th Cir.1962), the United States Court of Appeals for the Fourth Circuit explained that, under Maryland law, "legal title to land does not pass until a deed is properly executed and recorded, and . . . until this is done a vendee's equity in property is subject to destruction by a conveyance of the legal title to a *bona fide* purchaser without notice." *See also Price v. McDonald,* 1 Md. 403, 414 (1851) ("an equitable claim . . . will be enforced in a court of equity, except against a *bona fide* purchaser without notice") (citations omitted). Stated alternatively,

> [t]he general rule is that a purchaser of real estate takes subject to outstanding equitable interests in the property, which are enforceable against him [or her] to the same extent they are enforceable against the vendor, where the purchaser is not entitled to protection as a *bona fide* purchaser, and one who purchases the equitable title to real estate is not protected as a *bona fide* purchaser where he [or she] receives notice of a prior equity before he [or she] acquires the legal title; or where he [or she] receives notice before he [or she] has paid all or substantially all of the purchase price.

---

**12.** The terms "bona fide purchaser" and "innocent purchaser" have sometimes been used interchangeably in Maryland cases. *See, e.g., Archway Motors, Inc. v. Edelson,* 202 Md. 75, 84, 95 A.2d 475 (1953) ("the rights of innocent third parties, or *bona fide* purchasers without notice"); *Praeger v. Emerson–Brantingham Implement Co.,* 122 Md. 303, 312, 89 A. 501 (1914) ("innocent *bona fide* purchasers"); *Worthington v. Hiss,* 70 Md. 172, 188, 16 A. 534 (1889) ("innocent *bona fide* purchasers").

*Westpark, Inc. v. Seaton Land Co.,* 225 Md. 433, 450, 171 A.2d
736 (1961) (internal citations omitted). *See Leet v. Totah,* 329
Md. 645, 663–64, 620 A.2d 1372 (1993) (emphasizing that notice
destroys *bona fide* purchaser for value status); *Lewis v.
Rippons,* 282 Md. 155, 162, 383 A.2d 676 (1978) ("Where a
grantee accepts conveyance of property with actual knowledge
that there has been a prior sale of part of that property, he [or
she] is not a *bona fide* purchaser, notwithstanding the fact
that the prior deed was not recorded.") (citations omitted); *see
also Julian v. Buonassissi,* 183 Md.App. 678, 696, 963 A.2d
234 (2009) ("the title of a *bona fide* purchaser, without notice
of defects, is not vitiated even though a fraud was perpetrated
by his [or her] vendor upon a prior title holder") (citation
omitted).

■■■ Maryland cases have treated lenders who secure their
interests with a mortgage or deed of trust as entitled to the
protections available to *bona fide* purchasers for value, where
such lenders were without notice of the mortgagor's fraudu-
lent conduct. In *Silver v. Benson,* 227 Md. 553, 560, 177 A.2d
898 (1962), the Court of Appeals observed:

> It is well settled that in circumstances where a deed is set
> aside for fraud, a mortgagee not a party to the fraud is
> entitled to the protection afforded a *bona fide* purchaser by
> a court of equity, to the extent of his [or her] interest. But
> as was said in *Houston v. Wilcox,* 121 Md. 91, 99 [1913],
> paraphrasing earlier cases, "a Court of Equity will deal with
> the conveyance sought to be vacated on special terms, and
> will allow the instrument to stand as security for the money
> actually paid by the grantee."

*See also Knell v. Green Street Bldg. Assoc.,* 34 Md. 67, 71
(1871) (observing that judgment creditor was not entitled,
under the recording statute, to protections afforded a *bona
fide* mortgagee or purchaser for value, who perfects title, as
against umecorded deeds and mortgages, by having his or her
deed recorded first).

Other jurisdictions have also treated mortgagees as entitled
to the protections of *bona fide* purchasers for value, under

appropriate circumstances. For example, in *First Alabama Bank v. Brooker*, 418 So.2d 851, 855 (Ala.1982), the Supreme Court of Alabama set forth the following criteria for affording a bank such protections:

> In order for the Bank to avail itself of the status of a bona fide purchaser or mortgagee for value, our authorities hold certain facts must be established clearly, distinctly, and without equivocation: (1) that it is the purchaser of the legal as distinguished from the equitable title;[13] (2) that it purchased it in good faith; (3) that it parted with value as consideration therefor by paying money, or some other thing of value, assuming liability or incurring injury; (4) and that it had no notice, and knew no fact sufficient to put it on inquiry as to another party's equity, either at the time of the purchase, or at or before, the time it paid the purchase money or otherwise parted with such value.

*See also Life Sav. & Loan Assoc. of Am. v. Bryant*, 125 Ill.App.3d 1012, 81 Ill.Dec. 577, 467 N.E.2d 277, 282 (1984) ("A mortgagee of realty is regarded as a purchaser, and, if the mortgage is supported by consideration and is taken in good faith, the mortgagee will be protected against adverse claims of which it has no notice. *Where, however, the mortgagee, at the time of taking the mortgage, has knowledge or legal notice of a prior conveyance, it is not entitled to the protection of a bona fide purchaser.*") (internal citations omitted) (emphasis added); *Blaise v. Ratliff* 672 S.W.2d 683, 688 (Mo.Ct.App. 1984) ("A bank that loans money to a customer and takes a Deed of Trust to secure that loan, although technically speaking is not a *bona fide* purchaser for value because it purchases nothing, is in effect an innocent purchaser for value as the result of its loan on the property. A mortgagee of real

---

13. In Maryland, "the mortgagor of real estate is regarded as the beneficial owner of the mortgaged property but the mortgage conveys the whole legal estate to the mortgagee, subject generally to the condition subsequent that upon due payment of the mortgage debt and on performance of all the covenants by the mortgagor, the mortgage deed is avoided." *Hebron Sav. Bank v. Salisbury*, 259 Md. 294, 299, 269 A.2d 597 (1970).

property is regarded for some purposes as a purchaser and is entitled to the same protection given a *bona fide* purchaser if it meets certain tests.").

## C

### Basis for Circuit Court's Decision

As the foregoing discussion demonstrates, appellees are incorrect when they assert that "[a]ppellant's suggestion that it is a *bona fide* purchaser or lender for value completely contradicts the doctrine of equitable conversion and the express language of *Himmighoefer* ...." Appellees' status as owners of equitable title did not preclude appellant, as a matter of law, from becoming a *bona fide* lender for value.

Moreover, the circuit court did not, as appellees assert, "appl[y] the doctrine of equitable conversion and determine[ ] that [a]ppellant lack[ed] any interest in the Property because its debtor, Edward Moriarty, never had any interest to convey to [a]ppellant." Rather, the circuit court's ruling focused entirely on appellant's delay in recording its deed of trust and the "notice" which appellant was determined, by the court, to have possessed at the point in time when appellees instituted the original lawsuit. The court specifically ruled that appellant "sat on its rights by not recording its security interest" and opined that "[appellant] was on record notice if someone had run the title, and, you know, before their deed was recorded, it would have been clear. You know, this lawsuit would have shown up and the court order would have shown up." The circuit court also ruled that, if appellant had recorded its interest in August 2006, "there's no question in my mind that they would have been secure and they would have had priority," but that by waiting, they were "stuck" with the intervening court order affecting the Property.

In sum, the circuit court based its decision on what it believed to be a failure on the part of appellant to promptly record its security interest in the Property prior to receiving notice of appellees' claim to the Property based on their original lawsuit. As we have stated, on appeal from a sum-

mary judgment award, we ordinarily review only the grounds upon which the trial court relied in granting summary judgment. We shall next consider the propriety of the circuit court's ruling.

## D

### Notice

 We are aware of no authority supporting the proposition that a deed holder's "notice," for purposes of resolving a dispute between two competing interests to the same property, is to be assessed at the time of the *recording* of the deed. Rather, the relevant inquiry is whether the *bona fide* purchaser or lender has notice of an existing interest in the property when his or her own interest is *acquired. See, e.g., Westpark,* 225 Md. at 450, 171 A.2d 736 ("[O]ne who purchases the equitable title to real estate is not protected as a *bona fide* purchaser where he [or she] receives notice of a prior equity before he [or she] acquires the legal title, or where he [or she] receives notice before he [or she] has paid all or substantially all of the purchase price.") (internal citations omitted); *see also First Alabama Bank,* 418 So.2d at 855 (defining "notice" requirement, with respect to *bona fide* mortgagee as having "no notice, and [knowing of] no fact sufficient to put it on inquiry as to another party's equity, either *at the time of the purchase,* or *at or before, the time it paid the purchase money or otherwise parted with such value* ") (emphasis added).

Indeed, the type of notice upon which Maryland's recording statute places emphasis, with respect to establishing the priority of competing deeds to real property, is not the notice held by the deed holder at the time of recordation, but rather, the deed holder's notice as to competing interests when the deed is delivered.[14] Section 3–201 of the Real Property Article sets forth the rule for determining the "effective date" of a deed:

---

**14.** Section 1–101(c) of the Real Property Article defines the word "deed" as including deeds of trust.

*The effective date of a deed is the date of delivery,* and the date of delivery is presumed to be the date of the last acknowledgment, if any, or the date stated on the deed, whichever is later. Every deed, when recorded, takes effect from its effective date as against the grantor, his personal representatives, every purchaser with notice of the deed, and every creditor of the grantor with or without notice.

(Emphasis added). Section 3–203 further provides:

*Every recorded deed* or other instrument *takes effect from its effective date as against the grantee of any deed executed and delivered subsequent to the effective date,* unless the grantee of the subsequent deed has:

(1) Accepted delivery of the deed or other instrument:

 (i) In good faith;

 (ii) *Without constructive notice* under § 3–202; and

 (iii) For a good and valuable consideration; *and*

(2) Recorded the deed first.

(Emphasis added).

■■■ Under Maryland's recording statute, appellant, in order to establish the priority of its deed of trust over any prior deeds to the Property, was required to have *accepted delivery* of the deed of trust in good faith, without constructive notice and for good and valuable consideration. Once appellant, having acquired legal title in that manner, recorded the deed of trust, the deed of trust took effect, as of the date it was *delivered,* as against any other deed granted and recorded after that date. For our purposes, we may presume the effective date of the deed of trust to be August 11, 2006.

■■■ Appellees, although purchasers under an executed contract,[15] have never been granted a deed to the Property. The circuit court's October 15, 2007 order in the original lawsuit mandated that settlement on the Property take place,

---

15. Appellees were not required, under Maryland law, to record their contract for sale, although such an instrument may, under R.P. § 3–102, be recorded.

pursuant to the terms of the contract between appellees and HBNC. That court order, however, did not alter the statutory scheme by which appellant, having acquired a deed of trust to the Property prior to the litigation, could preserve the effective date of its interest through its recording of the deed of trust in the land records of Montgomery County. Additionally, neither the October 15, 2007 court order nor the April 2007 initiation of the original lawsuit and accompanying notice of *lis pendens* should have been considered by the court in determining whether appellant had notice of appellees' equitable interest in the Property on August 11, 2006, when appellant acquired its deed of trust. *See also Greenpoint Mortgage Funding*, 390 Md. at 229, 888 A.2d 297 ("A notice of *lis pendens* is intended to, and does, affect the title to property, in that its purpose is *to notify any future purchaser of the title* to the property that they will take the property subject to the result of the pending litigation.") (emphasis added); *Angelos v. Md. Cas. Co.*, 38 Md.App. 265, 268, 380 A.2d 646 (1977) (observing that, because a mortgagee's "property interest was acquired through a mortgage obtained prior to the commencement of the litigation upon which [a party's] *lis pendens* claim rests," it was "not subject to the operation of the doctrine").[16]

---

16. Appellant also cites to *Angelos, supra*, in support of its contention that, "where a mortgage is executed before—but recorded after—the filing of a lawsuit affecting real property, the mortgage takes priority over the claims in the lawsuit pursuant to [R.P.] § 3–201." *Angelos* involved a dispute between the holder of a third mortgage and a judgment creditor regarding each party's priority to surplus proceeds from a second mortgage foreclosure sale. 38 Md.App. at 266, 380 A.2d 646. The third mortgage was executed and delivered before, but recorded after, the judgment creditor initiated suit against the borrower. *Id.* at 267, 380 A.2d 646. The chancellor awarded judgment in favor of the judgment creditor under the doctrine of *lis pendens. Id.* at 268, 380 A.2d 646.

We found that doctrine inapplicable, because the mortgagee's property interest was acquired prior to the commencement of litigation. *Id.* We then turned to R.P. § 3–201 which, as we have explained, establishes that (1) the effective date of a deed is the date of delivery and (2) that "[e]very deed, when recorded, *takes effect from its effective date as against* the grantor ... and every creditor of the grantor with or without notice." *Id.* at 268, 380 A.2d 646 (emphasis added). The mortgage, therefore, "took effect against [the judgment creditor] as of

The circuit court's award of summary judgment in favor of appellees was thus based on an erroneous application of Maryland law with respect to the notice requirement as it affected appellant's claim to the Property. Accordingly, we reverse.

**E**

### Reversal and Remand as to Issue of *Bona Fide* Mortgagee for Value

Appellees argue that appellant cannot be a *bona fide* purchaser or mortgagee for value because it should have known, at the time it was granted the deed of trust, that Moriarty was conveyed the Property through a "secret, no-consideration deed" from HBNC. Appellees further assert that appellant should have been aware that the Property was partially improved by a home under construction and that HBNC was a commercial residential builder in the business of selling homes.

■■■ The circuit court did not base its ruling on any of these arguments in denying appellant's motion for summary judgment. We will not ordinarily sustain a grant of summary judgment on a ground not ruled upon by the trial court, unless that alternative ground is one that the trial court had no discretion to deny summary judgment. *Geisz v. Greater Baltimore Medical Center*, 313 Md. 301, 314 n. 5, 545 A.2d 658 (1988). We do not believe that the circuit court was without such discretion as to the determination of appellant's notice at

the date of the mortgage, which was (assuming the title report to [be] correct) nearly a month before the suits were filed." *Id.* at 268–69, 380 A.2d 646.

Appellees distinguish *Angelos* on the grounds that it only addressed the priority of a judgment creditor to surplus proceeds and did not address ownership of property. While *Angelos* is instructive in determining the interplay between the doctrine of *lis pendens* and the recording statute, our opinion in this case is also rooted in our application of the law with respect to *bona fide* purchasers or mortgagees for value and R.P. § 3–203. We need not determine whether *Angelos* directly controls all cases involving circumstances such as those present herein.

the time it was granted its deed of trust. We decline to uphold the grant of summary judgment on this alternative ground.

Nonetheless, the circuit court, in rendering its ruling, stated:

> If [appellant] had recorded its interest back in August of '06, there's no question in my mind that they would have been secure and they would have had priority, but I think by not recording it until '07, I think they're stuck with what happens in between, and that is that there's been an intervening court order affecting this property based on the lawsuit.

The above analysis of the circuit court on this point does not expressly state whether the circuit court considered and decided whether appellant was, as it claims to be, a *bona fide* mortgagee or lender for value. Thus, in light of our reversal, we shall remand the case for the circuit court to consider the issue of whether appellant in this case was, in fact, a *bona fide* mortgagee or lender for value without notice, consistent with the legal authority that we have discussed, *supra.*

## III

### Quiet Title

 Appellees asked the circuit court to grant judgment on Count Two of their complaint and quiet title to the Property, pursuant to R.P. § 14–108(a), which provides:

> Any person in actual peaceable possession of property, or, if the property is vacant and unoccupied, in constructive and peaceable possession of it, either under color of title or claim of right by reason of his or his predecessor's adverse possession for the statutory period, when his title to the property is denied or disputed, or when any other person claims, of record or otherwise to own the property, or any part of it, or to hold any lien encumbrance on it, regardless of whether or not the hostile outstanding claim is being actively asserted, and if an action at law or proceeding in

equity is not pending to enforce or test the validity of the title, lien, encumbrance, or other adverse claim, the person may maintain a suit in equity in the county where the property lies to quiet or remove any cloud from the title, or determine any adverse claim.

Appellant argues, as it did before the trial court, that appellees' motion for summary judgment in support of its count to quiet title is legally deficient, because appellees failed to allege in their complaint that they were in actual or constructive possession of the Property. Appellant stresses that a suit to quiet title, under R.P. § 14–108, may only be brought by a plaintiff in actual, peaceable possession of the property or, if the property is vacant and unoccupied, in constructive and peaceable possession of the property.[17]

Appellees counter that their complaint specifically referenced the October 15, 2007 order of the circuit court, which ordered HBNC to proceed with settlement on the Property as provided for in the sales contract. According to appellees, this order placed appellees in constructive possession of the Property.

In *Porter v. Schaffer*, 126 Md.App. 237, 260–61, 728 A.2d 755 (1999), we explained:

---

**17.** Appellant specifically argues that a complaint to quiet title must allege possession; it cites to *Barnes v. Webster*, 220 Md. 473, 154 A.2d 918 (1959) and *Wathen v. Brown*, 48 Md.App. 655, 429 A.2d 292 (1981), both of which dealt with demurrers to a complaint and neither of which involve motions for summary judgment. Appellant appears to argue that judgment in favor of appellees was improper because appellees failed to state a claim upon which relief could be granted-an issue that was, perhaps, more appropriately litigated through the procedural vehicle of a motion to dismiss. *See* Md. Rule 2–322(b). Nonetheless, because we have before us only the trial court's grant of summary judgment, we shall address this issue using the standards applicable to appellate review of summary judgment motions. *See Davis v. DiPino*, 337 Md. 642, 643, 655 A.2d 401 (1995) (holding that "an appellate court should not undertake to review whether a plaintiff failed to state a claim upon which relief can be granted when the only motion filed and the only motion on appeal was the trial court's grant of summary judgment").

The purpose of an action to quiet title is to "protect the owner of legal title 'from being disturbed in his [or her] possession and from being harassed by suits in regard to his [or her] title by persons setting up unjust and illegal pretensions....'" *Wathen v. Brown,* 48 Md.App. 655, 658, 429 A.2d 292 (1981) (quoting *Textor v. Shipley, 11* Md. 473, 475, 77 Md. 473, 26 A. 1019 (1893)). In pressing such a claim, the plaintiff has the burden of establishing both possession and legal title by "clear proof." *Stewart v. May,* 111 Md. 162, 173, 73 A. 460 (1909); *see Polk v. Pendleton,* 31 Md. 118, 124 (1869) (stating that the claimant must prove "clear legal and equitable title to land connected with possession").

Section 14–108(a) of the Real Property Article recognizes that possession may be actual or constructive. Appellees assert that they are in constructive possession of the property. In *Wathen,* 48 Md.App. at 658, 429 A.2d 292, we explained:

The alternative to "actual" possession *(i.e.,* title plus vacancy) was early recognized in the case of *Baumgardner v. Fowler,* 82 Md. 631, 640, 34 A. 537 (1896), which noted that:

"... Courts have held that *where a plaintiff has the legal title* to lands that are wild, uncultivated and unoccupied, he [or she] may invoke the aid of a Court of Equity to remove a cloud upon his title, although he [or she] *has no other than constructive possession resulting from legal ownership.*"

(Emphasis added).[18] "[T]he statutory requirement for constructive possession ... is that the property be 'vacant and unoccupied.'" *Id.* at 660, 429 A.2d 292.

Appellees point out that construction of the house was incomplete, as evidenced by the fact that windows were not installed, the house lacked electricity and trash and debris

---

**18.** We further explained that, although *Baumgardner* and other cases discussed in *Wathen* arose prior to the quiet title statute, the statute was "seemingly based upon them, and when enacted, it did not dispense with the necessity of showing possession, actual or constructive." *Id.* (internal citations omitted).

littered the Property. It is perhaps possible to infer, from this observation, that the Property was vacant and unoccupied. Nonetheless, based on the undisputed facts, appellees possessed equitable, and not legal, title to the Property. Moreover, the October 15, 2007 court order did not convey legal title to appellees. Instead, the order required HBNC to convey both possession and legal title to appellees, consistent with the terms of the contract. As is now abundantly clear, settlement on the contract never occurred.

In sum, in light of the undisputed facts, appellees failed to establish constructive possession of the Property, as required by the statute and Maryland case law. Accordingly, the circuit court erred by granting summary judgment in favor of appellees on their count to quiet title.

## IV

### Appellant's Cross Motion for Summary Judgment

Appellant assigns error to the circuit court's denial of its cross motion for summary judgment, which was based upon the same arguments raised by appellant in its opposition to appellees' motion for partial summary judgment. Because this portion of appellant's appeal is premature, we shall dismiss it. We explain.

The Court of Appeals explained, in *Boyd v. Bell Atlantic-Maryland, Inc.*, 390 Md. 60, 81, 887 A.2d 637 (2005):

This Court has made ¦clear on many occasions that "the right to seek appellate review of a trial court's ruling ordinarily must await the entry of a final judgment that disposes of all claims against all parties, and that there are only three exceptions to that rule: appeals from interlocutory orders specifically allowed by statute, predominantly those kinds of orders enumerated in Maryland Code, § 12–303 of the Cts. & Jud. Proc. Article; immediate appeals permitted under Maryland Rule 2–602(b); and appeals from interlocutory rulings under the common law collateral order doctrine." *Board of Educ. v. Bradford*, 387 Md. 353, 382–83, 875 A.2d 703, 720 (2005). We have made equally clear that,

for an order to constitute a final judgment for purposes of appeal, it must have at least three attributes: "(1) it must be intended by the court as an unqualified, final disposition of the matter in controversy, (2) unless the court properly acts pursuant to Md. Rule 2–602(b), it must adjudicate or complete the adjudication of all claims against all parties, and (3) the clerk must make a proper record of it in accordance with Md. Rule 2–601." *Rohrbeck v. Rohrbeck,* 318 Md. 28, 41, 566 A.2d 767, 773 (1989); *Smith v. Lead,* 386 Md. 12, 21, 871 A.2d 545, 550–51 (2005).

 Neither the circuit court's decision to *grant* appellees' motion for partial summary judgment, nor its decision to *deny* appellant's cross motion for summary judgment, constituted a final judgment, in light of the remaining counts in appellees' complaint and appellant's pending cross-claim against HBNC and Moriarty. Md. Rule 2–602(a)(1). *See, e.g., VanDer Vlugt v. Scarborough,* 51 Md.App. 134, 138, 441 A.2d 1105 (1982). Although the order from which appellant appeals, which awarded summary judgment in favor of appellees on Counts Two and Three of appellees' complaint, is an appealable interlocutory order, *see* C.J. § 12–303(3)(v) and n. 4, *supra,* the denial of a motion for summary judgment is an interlocutory order which is not appealable, absent a final judgment disposing of all claims before the court. *Porter Hayden Co. v. Commercial Union Ins. Co.,* 339 Md. 150, 164–65, 661 A.2d 691 (1995); *Nationwide Mut. Ins. Co. v. Hart,* 73 Md.App. 406, 414, 534 A.2d 999 (1988); *Merchants Mortgage Co. v. Lubow,* 275 Md. 208, 212, 339 A.2d 664 (1975). In any event, even in cases in which final judgment is entered disposing of all claims before the court, the trial court's discretion to deny or defer a ruling on a party's motion "ordinarily prevents an appellate court from directing that summary judgment be granted." *See Three Garden Village Ltd. P'ship v. U.S. Fidelity and Guaranty Co.,* 318 Md. 98, 108, 567 A.2d 85 (1989).

Equally as important, the circuit court issued its ruling denying appellant's cross motion from the bench and no separate order memorializing the court's oral ruling is con-

tained in the record. Nor is any such order reflected in the docket entries.

Maryland Rule 2–601(a) provides, in pertinent part, that "[e]ach judgment shall be set forth on a separate document." Rule 2–601(b) provides that the clerk "shall enter a judgment by making a record of it in writing on the file jacket, or on a docket within the file, or in a docket book, according to the practice of each court, and shall record the actual date of the entry. That date shall be the date of judgment." *See, also, Byrum v. Horning,* 360 Md. 23, 26–30, 756 A.2d 560 (2000). In *Billman v. Maryland Deposit Ins. Fund Corp.,* 312 Md. 128, 132, 538 A.2d 1172 (1988), the Court of Appeals held that Rule 2–601 applies to appealable interlocutory orders. Thus, the Court concluded that an interlocutory appeal from a circuit court's oral ruling finding a party in contempt was premature, as there was no separate document memorializing that ruling and no entry in the dockets reflecting that ruling. *Id.* at 130, 134–35, 538 A.2d 1172. The Court explained:

> From the standpoint of judicial administration permitting appeals from oral rulings which would be appealable inter-locutory judgments if properly entered is subject to the same objection as permitting appeals from oral rulings which would be final judgments if properly entered. Be-tween the oral ruling and the entry of judgment the trial court may change its mind in whole or in part.

*Id.* at 132, 538 A.2d 1172 (citations omitted). The Court added:

> Rule 2–601(b) provides that the date on which the clerk makes a record of the judgment by "writing on the file jacket, or on a docket within that file, or in a docket book" is "the date of the judgment." Both CJ § 12–304 relating to appeals in contempt cases and CJ § 12–303 relating to appeals from certain interlocutory orders therein enumerat-ed leave to the Maryland Rules not only the time for appeal but also the manner of determining the date when that time begins to run. *The time for appeal begins to run on the*

*date of judgment and that date is fixed by Rule 2–601(b) for appealable interlocutory, as well as final, judgments.*

Accordingly, even if the oral contempt order in the instant matter is an interlocutory order Rule 2–601 applies. *Because the order has never been entered as a judgment, this appeal is premature.*

*Id.* at 134–35, 538 A.2d 1172 (emphasis added).

We further observe that, although the Court of Appeals, in *Suburban Hosp. Inc. v. Kirson,* 362 Md. 140, 156, 763 A.2d 185 (2000), held that parties may waive the Rule 2–601 separate document requirement for preservation purposes, the Court further explained, in *Taha v. Southern Management Corporation,* 367 Md. 564, 569–70, 790 A.2d 11 (2002), that it did so "only where application of the waiver doctrine preserved the right to appeal, where none of the parties raised any objection, and where final judgment was entered on the docket." (Citation omitted). In *Taha,* the Court declined to find waiver where there were neither docket entries nor separate documents indicating that a final judgment was issued in the case, deciding, instead, to dismiss the appeal. *Id.* at 570–71, 790 A.2d 11.

In light of the foregoing discussion, we hold that appellant's challenge to the circuit court's denial of its cross motion for summary judgment is premature. We are without authority to review this challenge and, accordingly, shall dismiss it. Because we have remanded this case for reconsideration of appellees' motion for partial summary judgment, appellant is, of course, free on remand to move for reconsideration of the court's oral ruling as to its cross motion or to file a second cross motion for summary judgment based on our holding in this appeal.

**APPEAL FROM THE ORDER OF THE CIRCUIT COURT FOR MONTGOMERY COUNTY DENYING AP-PELLANT'S CROSS MOTION FOR SUMMARY JUDG-MENT DISMISSED. ORDER OF THAT COURT GRANT-ING APPELLEES' MOTION FOR PARTIAL SUMMARY JUDGMENT REVERSED AND REMANDED FOR FUR-**

410

THER PROCEEDINGS NOT INCONSISTENT WITH THIS OPINION.

COSTS TO BE PAID ONE–HALF BY APPELLANT AND ONE–HALF BY APPELLEES.